## Wytheville.

### JOHNSON v. COLLEY AND OTHERS.

June 11, 1903.

Absent, Cardwell, J.

1. GIFTS CAUSA MORTIS—*Essentials Of.*—The essential attributes of a gift *causa mortis* are the following: The thing given must be personal property; the gift must be made in the last illness of the donor while under the apprehension of death as imminent, and subject to the implied condition that if the donor recovers of the illness or survives the donee the gift shall be void; and possession of the property given must be delivered at the time of the gift to the donee, or to some one for him, and the gift must be accepted by the donee.

2. GIFTS CAUSA MORTIS—*Transfer of Title—How Gift Revoked or Defeated.*—In every valid gift *causa mortis* the title to the property must vest in the donee at the time of the gift. The donor may revoke the gift during his life, or it will be defeated by operation of law if the donor recovers from the illness which induced the gift, or survives the donee. If not so revoked or defeated it becomes absolute upon the death of the donor, but not till then.

3. GIFTS CAUSA MORTIS—*Condition—"If I Die or Anything Happens to Me."*—Where the other essentials of a valid gift *causa mortis* exist, the gift will not be defeated because accompanied by the words "If I die, or anything happens to me." This is but the expression of the condition which the law attaches to every gift *causa mortis*.

4. GIFTS CAUSA MORTIS—*Delivery to Third Person.*—Where one in view of impending dissolution clearly and intelligently manifests an intention to make a present gift of personal property to another, and in consummation of his intention makes such a delivery to a third person for the use of the intended donee as he is then capable of making, considering the character and situation of the property, the person to whom the delivery is thus made will be presumed, in the absence of countervailing circumstances, to take the property as the trustee of the intended donee, and not as agent of donor.

Appeal from a decree of the Circuit Court of Goochland county, pronounced May 13, 1902, in a suit in chancery, wherein the heirs and distributees of John Newton Johnson were the complainants, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*A. K. & D. H. Leake,* for the appellant.

*L. O. Haden* and *A. A. Gray,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The question presented by this record is the validity of an alleged gift *causa mortis.* The facts are few, simple, and uncontradicted.

It appears that Joseph Newton Johnson, a bachelor advanced in life, lived in the county of Goochland in comfortable circumstances, being the owner of valuable real and personal property. The only persons living with him at the time of his death and for some time prior thereto were Lizzie Johnson, a negro woman, and her two illegitimate children, one of whom was Libby Carter Johnson, a little girl about 11 years of age, who, by her next friend and guardian *ad litem,* is the appellant here. These persons, Lizzie Johnson and her two children, attended to the domestic affairs of Joseph Newton Johnson, doing his cooking and washing, and waiting on him generally. It appears that the deceased was warmly attached to the appellant, saying that "he thought as much of her as if she were his own dear child, and that he would provide for her well at his death." The evidence is abundant that the deceased attempted to accomplish this cherished purpose. In August, 1901, he had prepared by his friend and neighbor, George P. Cowherd, the treasurer of the county, a will by which he made this child his sole legatee and devisee except to the extent of pro-

viding a home for her mother with her. On the day before his death he sent for his friend, Mr. Cowherd, and had him read over the will prepared in August, 1901, which had not been executed. After reading the paper, Cowherd asked him if he wished any changes made. He replied that he did not, that the will was as he wanted it. He then asked that Marcus Smith be called in, and that he and Cowherd would witness the will. Cowherd suggested that, as he had been named as executor, some one else had better act as witness. Thus the execution of the will was temporarily postponed. As Cowherd was leaving the room, the deceased handed him a bundle of money, with the injunction that, if he died, or anything happened to him, Cowherd must give it to the little colored girl, Libby Carter Johnson, and see that she got it. Mr. Cowherd then left the room with the money in his possession, and did not again see the deceased, who died the next day, without having perfected the execution of the will which had been prepared in accordance with his wishes.

After the death of Johnson, the money placed in the hands of Cowherd for the appellant was counted in the presence of witnesses, and found to amount to the sum of $1,758.43, and then deposited in bank by Cowherd for safekeeping, until he should be advised as to its proper disposition.

Briefly stated, the essential attributes of a gift *causa mortis* are: (1) It must be of personal property; (2) the gift must be made in the last illness of the donor, while under the apprehension of death as imminent, and subject to the implied condition that if the donor recover of the illness, or if the donee die first, the gift shall be void; and (3) possession of the property given must be delivered at the time of the gift to the donee, or to some one for him, and the gift must be accepted by the donee.

These propositions are so well established that citation of authority is not necessary in support of them.

In the case at bar the *factum* of the gift is clearly established. It is also indisputably shown that the gift was of personal property, and that it was made during the last illness of the donor, and under the apprehension of death as imminent, the donor having died of his then existing disorder the following day.

It is contended that the delivery of the package of money to Cowherd was not an absolute surrender of dominion and control over the property; that it was not a complete transfer of present title and possession to the donee; that the gift was testamentary in character, and therefore void.

By "testamentary" is meant that no title whatever was to vest in the donee until the donor's death; that thus the gift was in the nature of a testament, and, not being executed in the mode prescribed by the statute of wills, it was inoperative.

The title to every gift *causa mortis* must vest in the donee at the time of the gift. It vests, however, subject to certain conditions subsequent. The donor may revoke the gift during his life, or it will be defeated by operation of law if the donor should recover from the illness which induced the gift, or should survive the donee. If it is not revoked or defeated by operation of law, it becomes absolute at the donor's death, but not until then. 3 Minor's Inst., p. 606; 2 Kent, 444; 3 Redfield on Wills (2d Ed.), p. 322, etc.; 1 Story's Eq., sec. 606; 3 Pom. Eq., sec. 1146.

Subject to these conditions, which are incident to every gift *causa mortis*, and may arise to defeat the title vested in the donee, there was certainly a delivery of the package of money to George P. Cowherd, who took complete physical possession of it, and at once removed it from the house of the donor to his own home for safekeeping. As already seen, the donor had the right to revoke the gift, or it may have been defeated, in the manner indicated by, operation of law, but apart from these conditions, to which the gift was subject, it is difficult to perceive what control the donor could have exercised over cur-

rent money in the hands of another at some distance from his dying bed. From the time of the delivery until the death of the donor the money was in the exclusive possession and control of Cowherd, the donor having transferred to the donee a present title to the inchoate, imperfect, and defeasible interest contemplated by every gift *causa mortis*.

It is insisted that the language of the donor, "if I die, or anything happen to me," which accompanied the delivery of the money, was a condition attached to the gift that it was not to take effect until the donor's death, and shows that a testamentary disposition was intended, and not a gift *causa mortis*. The language used by the donor is but the expression of the condition attached by implication of law to every gift *causa mortis*—that it does not take effect absolutely and irrevocably except in case of the death of the donor. It is not necessary that the donor should express the condition, but, if he does so, it tends to make plain the character of the gift, rather than to cast doubt upon it. So far as we have had access to the authorities, they are practically unanimous in holding that the language "if I die," when used by the donor in making the gift, is but an inference of law from the circumstances, and does not impair the gift. *Wells* v. *Tucker*, 3 Bin. 370; *Snellgrove* v. *Bailey*, 3 Atk. 214; notes to *Ward* v. *Turner*, 1 Lead. Cas. in Eq., p. 1222; *Thomas* v. *Lewis*, 89 Va. 1, 15 S. E. 389, 18 L. R. A. 170, 37 Am. St. Rep. 848.

The language "if anything happen to me" was but another mode of expressing the donor's apprehension of death, and was not intended to annex some condition other than death to the gift. Under the circumstances in which the words were employed, they commonly mean "if I die," their use being repetition, adding nothing to the last-mentioned expression. *Thomas* v. *Lewis, supra*; *Shackelford* v. *Brown*, 89 Mo. 546, 1 S. W. 390; *Grymes* v. *Hone*, 49 N. Y. 17, 10 Am. Rep. 313. In the last-named case Judge Peckham, in delivering the opinion of

the court, referring to the words of the gift, said: "The declaration of the donor that his wife should keep the assignment, and not hand it over to the donee till after his death, as he did not know what might happen, nor but that they might need it, was simply a statement of the law as to the gift, whether the declaration was or was not made. Clearly, he could not tell whether he should die or recover from that ailment. If he did recover, the law holds the gift void."

The case of *Basket* v. *Hassell*, 107 U. S. 622, 2 Sup. Ct. 415, 27 L. Ed. 500, is much relied on in support of the contention that the gift in question was testamentary in character, but we fail to appreciate its pertinency as authority. The facts are wholly different, and the case is clearly distinguishable from the case under consideration. Chaney held a bank certificate of deposit payable to his order or demand. During his last illness he indorsed the certificate as follows: "Pay to Martin Basket, of Henderson, Ky.; no one else; then not till my death. My life seems to be uncertain. I may live through this spell. Then I will attend to it myself." He delivered the certificate thus indorsed to Basket, and afterwards died. It was held that this was not a valid gift *causa mortis* of the money represented by the certificate. The decision turned on the construction and legal effect of the indorsement, "Pay to Martin Basket; to no one else; then not till my death." It was held that under the restrictive terms of this indorsement the title to the property did not vest in Basket at the time of the gift, subject to be divested by revocation or by the operation of law during the donor's life, but by the express terms of the assignment no title was to vest until the death of the donor. That being a disposition of property to take effect only after the death of the donor, it came within the ordinary definition of a will, and, not being executed in conformity with the law regulating testamentary dispositions of property, it was inoperative.

We will not prolong this opinion to review in detail several

other cases relied on by the appellees. They have been fully considered, and are not regarded as at all affecting the soundness of the conclusion reached in the case at bar.

Judge Lewis spoke for this court in *Yancey* v. *Field*, 85 Va. 756, 8 S. E. 721, and he has demonstrated the inaptness of that case as authority for this in an opinion filed by him in the case of *Thomas* v. *Lewis, supra.*

It is further contended that George P. Cowherd was merely the agent of the donor to deliver the package of money to the appellant after the donor's death; that the agency ceased with the death of the donor; and that Cowherd was left without authority to act or carry out the instructions of his principal with respect to the money placed in his hands. Delivery may be made to a third person under such circumstances as to create an agency merely; as where the donor retains dominion or control over the thing given. If, however, the delivery is made to a third person for the use of the donee, or under such circumstances as indicate that the donor relinquishes all right to or control of the thing given, and intends to vest a present title in the donee, the gift will be sustained.

Where one, in view of impending dissolution, clearly and intelligently manifests an intention to make a present gift of personal property to another, and in consummation of his intention makes such a delivery to a third person for the use of the intended donee as he is then capable of making considering the character and situation of the property, the person to whom delivery is thus made will be presumed, in the absence of countervailing circumstances, to take the property as the trustee of the intended donee, and not as the agent of the donor. *Wells* v. *Tucker*, 3 Bin. 370; *Deval* v. *Dye*, 123 Ind. 321, 24 N. E. 246, 7 L. R. A. 439; *Shackleford* v. *Brown*, 89 Mo. 546, 1 S. W. 390; *Sessions* v. *Moseley*, 4 Cush. 87; *Grymes* v. *Hone*, 49 N. Y. 17, 10 Am. Rep. 313; 3 Minor's Insts., p. 603; Roper on Legacies, Vol. 1, p. 5; 2 Schouler, Pers. Prop. 1645.

In the case at bar the object of the donor's bounty was a child of tender years. He was a man of intelligence and business experience, and doubtless knew that this child was too young to be intrusted with the large sum of money he desired to give her, and for this reason he turned to his friend and adviser, in whom he appears to have had great confidence, and placed the money in his hands as the surest means of securing the same for the use and benefit of this little child upon whom his last earthly solicitude was lavished. There being no countervailing circumstances, one who thus reeceives property for another must be held to be the trustee of the intended donee, and not the agent, merely, of the donor.

We are not unmindful of the great danger of fraud in this sort of gift, and that courts cannot be too cautious in requiring clear proof of the transaction. Nor are we prepared to dispute the wisdom of Lord Eldon's observation that "it would be quite as well if this donation *causa mortis* were struck out of our law altogether." So long, however, as the law remains unchanged by competent authority, imbedded as it is in our jurisprudence, and sanctioned by the experience of centuries, the courts must give it effect in cases like this, where the evidence is clear and convincing.

For these reasons the decree complained of must be reversed, and the cause remanded for further proceedings to be had therein not in conflict with the views expressed in this opinion.

*Reversed.*