## GIFTS INTER VIVOS AND CAUSA MORTIS.

Circuit Court of Cuyahoga County.

JOHN DELFS, EXECUTOR OF THE ESTATE OF PETER J. WEISS, DECEASED, v. PAULINE YEAGER ET AL.

Decided, February 26, 1906.

*Gifts—What Evidence of Delivery Insufficient to Establish a Gift Causa Mortis—What Sufficient for Gifts Inter Vivos—Evidence of Relation of Parties Admissible.*

1. Evidence that donor handed donee a bank-book, telling her that it and the money it represented were hers, and that thereafter the donor took back the bank-book to make arrangements at the bank to secure the payment of the money to the donee, after which it was never redelivered to the donee, while not establishing a gift *causa mortis* may be sufficient to establish a gift *inter vivos*.

2. Evidence of services performed by the donee for the donor of an alleged gift is competent as showing the relationship between the parties, a motive for the gift and an intention to make one.

*W. C. Rogers*, for plaintiff in error.

*J. A. Fogle, J. C. Heald* and *Squire, Sanders & Dempsey,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

The contention in this case is about money deposited on a savings account and represented by a bank book issued by the defendant, the Lorain Street Savings Bank Company. Peter J. Weiss in his lifetime was the owner of this money or bank account, and Pauline Yeager claims that Mr. Weiss gave her the bank book and the money represented thereby on Sunday, July 23, 1904, two days before he died. The plaintiff in error claims that no such gift was ever made and claims the fund for administration as part of the estate of the deceased.

Litigation over the matter begun by Mrs. Yeager suing the bank for the money. The bank, by interpleading, brought the money into court and brought in the executor as a rival claimant for the fund. The issues being made up between the claim-

ants of the fund, the case went to trial to a jury, the executor excepting to a jury trial, however, which raises one of the questions to be reviewed here. The plaintiff claimed the fund as a *donatio mortis causa,* and it was submitted to the jury on that theory by a charge which omitted all reference to the law on the subject of gifts *inter vivos.*

The jury found specially that a gift had been made and that it was a gift *causa mortis.* Judgment was accordingly entered in favor of Mrs. Yeager, whereupon the executor perfected proceedings in error to this court. We think there was no error in submitting to a jury the issues of fact between the claimants of the fund. *McGinnis* v. *Schwab,* 24 O. S., 336.

From the bill of exceptions it appears that Peter J. Weiss was about eighty years old at the time of his death, on Tuesday, July 25, 1904. He was possessed of considerable money which he had saved by his frugality during a long life. This money was on deposit in various savings banks in the city of Cleveland.

The old man had no family and had lived alone for many years. There were two grand-daughters of his deceased wife, and these step-grandchildren, if they may be so called, were remembered in the old man's will.

Mr. Weiss had an accident several years before his death, as a result of which he suffered pains in his back. The plaintiff, a woman in humble circumstances, had nursed the old man, washed for him, rubbed his back, made nourishing soup for him and cared for him with many kindly offices and for a long time. He occasionally visited her at her home and took meals there. She says he had paid her for all her services and it seems he owed her therefor nothing but gratitude. Exceptions were taken to testimony along these lines, but we think it entirely competent as showing the relation between the donor and donee, a motive for the gift and an intention to make one.

On the Sunday preceding his death, Mr. Weiss went to the home of Mrs. Yeager, arriving there about dinner time. When he appeared Mrs. Yeager said, "Why, how badly you look," and he answered: "I feel as bad as I look." Something was said by him indicating that he did not expect to live long.

Then Mr. Weiss gave Mrs. Yeager the bank book in question, telling her it and the money in the bank represented by it were hers. The words of gift as testified to by several witnesses, were absolute and without conditions, or reference to death. Mrs. Yeager took the bank book and put it in her bosom. Then Mr. Weiss requested her to give him the book again that he might go to the bank with it the next day and have it fixed so that she would have no trouble about drawing the money, telling her that if he could not attend to the matter, she would find the book at his house behind Washington's picture, or in the Bible.

Thereupon the book was handed back to the old man and afterwards he spoke of the book and money as belonging to Mrs. Yeager. The old man never went to the bank with the book and died on the following Tuesday evening. At his bedside were Mrs. Yeager and several persons. It is claimed that Mrs. Yeager repossessed herself of the bank book by direction of Mr. Weiss that evening, before he died. The record, however, shows this point was disputed by several witnesses and there is no competent evidence that such was the fact. It seems clear that the book was in the Bible when the old man died and Mrs. Yeager took possession of it later.

Counsel for defendant undertook to examine the plaintiff as to what she had at one time told him regarding what had occurred at the death bed; upon examination by her own counsel as to the whole conversation, she was permitted to say, over objection, that she had informed him that Mr. Weiss before he died told her to take the book and that she did so at once. We think there was no error in permitting the witness to give this entire conversation, but it can not be considered as evidence of what in fact did occur, and so the trial judge ruled and instructed the jury.

The serious and troublesome part of this case is the charge of the court. It was framed upon the theory advanced by the plaintiff that the question to be decided by the jury was whether or not there had been a *donatio mortis causa*. No directions were given as to the requisites of a gift *inter vivos,* and yet we think the judgment is sustainable upon that ground alone.

From the evidence as to what occurred at Mrs. Yeager's house on Sunday, the jury might have properly found a gift *inter vivos*. That Mr. Weiss was then sick and died two days later, would not necessarily reduce a gift then completely executed, to one *causa mortis*.

"The fact that the donor is near death is not of controlling importance in determining whether the gift is *causa mortis*, or *inter vivos*. * * * The test whether the gift is one *inter vivos* or one *causa mortis*. is not the mere fact that the donor is *in extremis*, and expects to die, and does die of that illness, but whether he intended the gift to take effect *in praesenti*, irrevocably and unconditionally."

See note XIII gr. to the case of *Johnson* v. *Colley*, 99 Am. St. Rep., 884, 917 and cases cited.

It becomes important in this case to determine to which class the gift claimed belongs, because of the fact that the bank book was returned to the donor that he might take it to the bank "so that the donee would have no trouble in drawing the money." The court charged that the donor might have possession of the book as agent for the donee and such possession would be the constructive possession of the donee. This rule is correct as applied to gifts *inter vivos*. See the case of *Martin* v. *Funk*, 75 N. Y., 134, quoted with approval by Judge Follett in the case of *Gano* v. *Fisk*, 43 O. S., 462, 472.

But as to gifts *causa mortis*, the rule appears to be otherwise. At least there are strong reasons, growing out of the vital distinction between the two classes of gifts, which have brought us to such conclusion.

A gift *causa mortis* is revocable, but a gift *inter vivos* is not. For this reason it has been held with regard to the revocable class of gifts:

"Not only must there be a delivery, but the possession of the donee must be a continued one, and the donor have parted with all control and dominion over the subject matter of the gift in favor of the donee, so as to put it out of his power to repossess himself thereof, and no further act be required on his part to vest the title in the donee." *Johnson* v. *Colley*, 99 Am. St. Rep.. 884, 895, note IVa, *Thornton on Gifts*, 211.

Gifts of this class are not favored in law, because of the ease with which fraud may be practiced. To be valid they must be made in the last sickness and unrevoked. Possession by the donor at his death is very strong evidence of revocation and after his death the temptation to fraud and perjury is so great that the bars against it should not be let down. These considerations do not usually intervene in the case of gifts *inter vivos,* where the donor can testify in his own behalf.

We are well aware that to conclude, as we have in this case, that there might have been a valid gift *inter vivos* two days before the donor's death, not good as a gift *causa mortis,* because the bank book was in the donor's possession at his death, weakens the force and conviction of the reasons stated, but we have intimated our views regarding the two classes of gifts, because the case must be again submitted to a jury.

It is doubtful if any jury will go astray if required to find, under proper instructions, whether a gift of either class was made by Mr. Weiss.

For error in the charge the judgment is reversed and the cause remanded for a new trial.