**NEWLAND, Estate of, In re.**

Probate Court, Franklin County.

No. 117496. Decided June 12, 1946.

## OPINION

By McCLELLAND, J.

This matter is brought before this Court by Harold Adams, Administrator of the Estate of Harley Edgar Newland, in which he alleges that Beatrice Weiser, H. L. Littleton, and Emily Giffin, have concealed, embezzled, or conveyed away, or are or have been in the possession of monies and properties of the Estate of Harley Edgar Newland; that said monies consist of at least $2500.00, and insurance policies and other property.

The Court has heard the testimony of Beatrice Weiser, H. L. Littleton and Emily Giffin, all of the defendants, and also the testimony of the son of the deceased. The Court has also had the benefit of briefs filed by attorneys for the contending parties.

As to the $2500.00 mentioned in the complaint, it is the contention of the defendants or persons charged, that the transaction results in a gift causa mortis. This contention is denied by the complainant. The gist of the whole transaction is stated in the testimony of Mrs. Giffin, whose deposition is before the Court. The following language appears in the transcript:

Q. How much did he hand you? A. $2500.00.

Q. And when he handed you this money will you tell us what he said to do with it? A. He called me out there, he was staying with Mr. & Mrs. Raymond Sheeley.

Q. Where were they living? A. In Sabina. He had been here in town I don't suppose over an hour at the most, and wanted me to come out there right away and I told him no, I would wait until later, I thought he needed to rest. The first thing he did was to say "I called you out here for a purpose". He said, "I have this money here, you are the only person that I can trust. I want you to take it and the only thing I am going to ask you to do with it, I have made arrangements if anything happens to me I want the funeral director, "he called him 'Roger' because they were personal friends, to pay my funeral expenses and I want you to keep this money." He said, "The only thing is if I get well I want it back. If anything happens to me you do whatever you see fit with it; whatever you want to do." In the beginning I said "Harley, why don't you put it in the bank or write a will?". He

said he didn't want to. He said he didn't want any of his damned relations to get it. That is exactly the words he said. I did what he asked. He said "Under no circumstances give it to any one as long as I am alive. I might want it back."

The testimony discloses that at the time the above mentioned conversation was held he turned over to Mrs. Weiser the sum of $2500.00. She kept it until after his death. She then turned the entire $2500.00 over to Mr. H. L. Littleton, funeral director, and one of the defendants. Mr. Littleton deducted approximately $900.00 from the $2500.00, and then at the direction of Mrs. Giffin, turned the balance over to Mrs. Weiser, who claims to be a creditor of the Estate of Mr. Newland, growing out of her alleged long care and accommodation to the deceased.

It now becomes incumbent upon this Court to make a finding as to whether the transaction as above related constitutes a gift causa mortis.

One of the best stated cases involving the characteristics of a gift cause mortis, is contained in the decision of the Court of Appeals in the case of **Van Pelt, Executor v King et al**, reported in **22 Oh Ap page 295.** The four syllabi of that case are as follows:

1. To constitute "gift causa mortis," thing given must have been donor's, given when he was in peril of death or under apprehension of death from existing malady, and possession delivered to donee or some one for his use, with intention to vest title conditionally on donor's death, leaving sufficient assets to pay his debts.

2. While gift causa mortis is revocable and conditional and gift inter vivos is not, there is no difference in character of delivery required.

3. Attempted gift which does not vest donee present owner and dominion over it is ineffectual as gift, either inter vivos or causa mortis.

4. Essential element of delivery of gift is that title shall immediately vest in donee.

The above named decision refers to the case of Johnson v Colley, 44 S. E. page 721, which, in the opinion of this court, contains one of the best statements of the elements necessary to constitute a gift causa mortis, of any of which this Court has been able to discover. At page 722 of that report we find a statement of the essential elements of a gift causa mortis, as follows:

1. It must be of personal property.

2. The gift must be made in the last illness of the donor, while under the apprehension of death as imminent, and subject to the implied condition that if the donor recover of

the illness, or if the donee die first, the gift shall be void; and

3. Possession of the property given must be delivered at the time of the gift to the donee, or to some one for him, and the gift must be accepted by the donee.

Courts of Ohio still recognize gifts causa mortis but they are so closely related to testamentary disposition that they are looked upon by the courts with caution, and the courts will not sustain them unless the evidence in support thereof is clear and convincing to the mind of the Court.

There is a difference, however, between a gift causa mortis and a testamentary disposition. This distinction is made by the Court in the case of Johnson v Colley, and is found on page 722 of that report, as follows:

"By 'testamentary' is meant that no title whatever was to vest in the donee until the donor's death; that thus the gift was in the nature of a testament, and, not being executed in the mode prescribed by the statute of wills, it was inoperative.

The title to every gift causa mortis must vest in the donee at the time of the gift. It vests, however, subject to certain conditions subsequent. The donor may revoke the gift during his life, or it will be defeated by operation of law if the donor should recover from the illness which induced the gift, or should survive the donee. If it is not revoked or defeated by operation of law, it becomes absolute at the donor's death, but not until then."

Now let us again refer to the language used by the donor when he handed the property to Mrs. Giffin. He said:

"I have this money here, and you are the only person that I can trust. I want you to take it and the only thing I am going to ask you to do with it, I have made arrangements if anything happens to me I want the funeral director to pay my funeral expenses, and I want you to keep this money. But one thing is if I get well I want it back. If anything happens to me you do whatever you see fit with it. Whatever you want to do."

Did the title by the above language vest in the donee? We first will discuss the language which was used in the latter part of the statement.

"The one thing is, if I get well, I want it back."

In our opinion this language adds nothing whatever to

the gift, nor does it detract anything therefrom. It is inherent in the nature of a gift causa mortis that if a person suffering from a malady recovers therefrom, the gift, by operation of law, becomes invalid.

Now, going to the language "if anything happens to me". What is the meaning of that language? This Court, in the case of Streeper v Myers, has held such language to be equivalent to "if I should die". This construction has been approved by the Supreme Court of Ohio, in the same case.

In the Colley case, the same terminology was construed by the court, in which the court uses the following language:

"The language 'if anything happens to me' was but another mode of expressing the donor's apprehension of death, and was not intended to annex some condition other than death to the gift. Under the circumstances in which the words were employed, they commonly mean 'if I die,' their use being repetition, adding nothing to the last-mentioned expression."

Therefore to paraphrase the language of the donee it would be as follows:

"I have this money here, you are the only person I can trust. I want you to take it and the only thing I am going to ask you to do. with it, I have made arrangements that if I die, I want the funeral director to pay my funeral expenses. I want you to keep this money".

He therefore divested himself of the title to the property, subject to the expressed condition that if he recovered, and also subject to the implied condition as set forth in the case above mentioned.

It is to be noted, however, that Mrs. Giffin's gift was not an absolute gift of the property, but she was given the property in trust subject of course to the above named conditions subsequent. She was to pay the funeral expenses and then she was to. do with the remainder whatever she wished to do with it. She turned the entire $2500.00 over to Mr. Littleton, who deducted the amount of the funeral bill, and then directed Mr. Littleton to turn the remainder over to Mrs. Weiser, who proved to be a creditor of the estate. Mrs. Weiser has credited that remittance on her claim against the estate.

It is also to be noted, that Mr. Newland said that Mrs. Giffin was the only person whom he could trust. Had he intended the gift to be an absolute gift, he certainly would not have expressed any idea of a trust. He therefore expected her to use the money for some purpose other than her own. She was a trustee, and, under the language by which the trust was created, it is very doubtful if she could have used the money for her own benefit, had she so desired.

Now, let us consider the testimony of Mrs. Weiser. She testified that she had money in her safety deposit box which she turned over to Mr. Newland, and Mr. Newland told her to keep it. She insisted that Mr. Newland take it with him because he might need it. He did so, and when he realized he was suffering from an incurable malady, from which grew the apprehension of death, he turned the money over to Mrs. Giffin, with directions as above noted.

We must also take into consideration the statement of Mr. Newland that he did not wish his relatives to have any portion of his estate. It is therefore only reasonable that he would wish to dispose of his property prior to his death.

We must also take into consideration the interest of the witnesses as reflecting upon their credibility. Mrs. Giffin's family were long-time friends of Mr. Newland. He frequently came to their home, visited with them, and ate meals with them. Mrs. Giffin profited nothing by the transfer, although later, Mrs. Weiser made her a gift of $200.00. We therefore must give her testimony the utmost degree of credibility.

Mr. Littleton and Mrs. Weiser are both interested witnesses. His funeral bill, in the amount of $900.00 was paid from the proceeds of the gift. The balance of the gift, amounting to approximately $1500.00 was turned over to Mrs. Weiser. The circumstances, however, are such to induce this Court to give her testimony a fairly high degree of credibility.

Although the courts of Ohio look with disfavor upon gifts causa mortis they are recognized when the proof is such as to be considered clear and convincing. Taking all of the circumstances into consideration we are compelled to find that Mr. Newland divested himself at the time of the transfer of the money of his title to the property subject to being divested upon the happening of any of the contingencies hereinbefore referred to. We must further find that Mrs. Giffin was vested of the title at the time she received the money and not at the death of Mr. Newland. Had the circumstances been such to defer the vesting of the title until the death of Mr. Newland, then we would have had an attempted testamentary disposition of the property, which, of course, would be invalid

according to the Ohio Law. Therefore as far as the $2500.00 is concerned this court is compelled to hold that the defendants are not guilty.

We come now to the consideration of the proceeds of the insurance policy. This Mrs. Wiser collected. She says she paid a number of the installments of the premiums on the policy; that Mr. Newland himself was the beneficiary. Although there is no proof of it, the Court must assume that there was a Facility of Payment clause in the policy which would permit the insurer to pay the policy to any person who might seem to it to be equitably entitled thereto by virtue of any expense which the recipient might have paid. Such a clause only exonerates the insurance company. When any one receives the proceeds of an insurance policy by virtue of the provisions of the Facility of Payment Clause, that person may be considered a trustee for the persons equitably entitled thereto. This Court has made such a holding in the **Septer Case,** reported in **3 OO 359.** The testimony shows that the funeral bills had been paid before the insurance money was collected. They were paid out of the trust fund the net only of which would go to Mrs. Weiser after the funeral bills were paid.

It is therefore the finding of this Court that Mrs. Weiser is guilty of withholding assets of the estate, to-wit, the proceeds of the insurance policy which was collected by her.

An order may be drawn accordingly.

C. P. McCLELLAND
Probate Judge