**NEWLAND, Estate of, In re.**

Ohio Appeals, Second District, Franklin County.

No. 3941.   Decided October 11, 1946.

Harold F. Adams, Columbus, for plaintiff-appellant.

H. S. Kerr, Columbus, for Beatrice Weiser, defendant-appellee.

Carey and Stone, Kenneth O. Stone of Counsel, Wilmington, for R. L. Littleton, defendant-appellee.

## OPINION

By WISEMAN, J.

This is an appeal on law from the judgment of the Probate Court of Franklin County, Ohio. A complaint was filed in the Probate Court under §10506-67 GC by Harold F. Adams, Administrator of the estate of Harley Edgar Newland, deceased, in which it was claimed that Beatrice Weiser, R. L. Littleton and Emily Giffin "concealed, embezzled, or conveyed away or are or have been in the possession of moneys and properties of the estate of said Harley Edgar Newland in fraud of the rights of the undersigned and others interested in said estate; that said moneys and properties include moneys of at least $2500.00 and insurance policies, personal effects and other property".

The Probate Court found that the decedent had made a gift causa mortis of $2500.00 to Emily Giffin, but found Beatrice Weiser and R. L. Littleton guilty of withholding from the administrator the proceeds of an insurance policy in the amount of $617.32 and found that the administrator was entitled to recover said amount. From the judgment of the Probate Court in which it found a gift causa mortis had been made of the $2500.00 to Emily Giffin, the administrator has appealed to this Court.

For his assignment of error the appellant claims the Probate Court erred in finding that the transfer of the said $2500.00 constituted a valid gift causa mortis and had erred in rendering judgment against appellant and in favor of appellees with respect to said $2500.00.

The sole question for this Court to determine is whether the decedent made a valid gift causa mortis of the $2500.00. The evidence shows that a close personal friendship existed between the decedent and the defendants; that he placed im-

plicit trust and confidence in them. The record shows that the decedent, realizing that he suffered from an incurable malady, and while under the apprehension of death, called Emily Giffin to his place of residence and turned over to her $2500.00 in money; that a short time thereafter he died. The conversation which took place between Emily Giffin and the decedent at the time the money was turned over is found in the deposition of Emily Giffin and is as follows:

"The first thing he did was to say 'I called you out here for a purpose'. He said, 'I have this money here, you are the only person that I can trust, I want you to take it and the only thing I am going to ask you to do with it, I have made arrangements if anything happens to me I want the funeral director' he called him Roger because they were personal friends, 'to pay my funeral expenses and I want you to keep this money'. He said, 'the only thing is if I get well I want it back. If anything happens to me you do whatever you see fit with it; whatever you want to do'. In the beginning I said, 'Harley, why don't you put it in a bank or write a will.' He said he didn't want to. He said he didn't want any of his damned relations to get it. That is exactly the words he said. I did what he asked. He said 'under no circumstances give it to any one as long as I am alive, I might want it back.' "

Did the decedent make a valid gift causa mortis? While the Courts do not favor gifts causa mortis and look upon them with caution, nevertheless effect will be given thereto when the elements of a gift causa mortis are clearly proven. What are the elements which constitute a gift causa mortis? Such gifts are clearly distinguishable from gifts inter vivos where the relinquishment of ownership must be unconditional and irrevocable. This is not true with respect to gifts causa mortis. Such a gift may be said to be conditional. Title vests in the donee subject to certain conditions subsequent. In **Saba v Cleveland Trust Company, 23 Oh Ap 163,** the Court defines a gift causa mortis as follows:

" 'Gift causa mortis' is gift of personalty in contemplation of approach of death, subject to defeasance if danger of death passes without donor dying or revocation by donor before death or death of donee before donor."

In **Van Pelt, Exr., v King, 22 Oh Ap 295,** the first four paragraphs of the syllabi are as follows:

"1. To constitute 'gift causa mortis', thing given must have been donor's, given when he was in peril of death or under apprehension of death from existing malady, and possession delivered to donee or some one for his use, with intention to vest title conditionally on donor's death, leaving sufficient assets to pay his debts.

"2. While gift causa mortis is revocable and conditional—and gift inter vivos is not, there is no difference in character of delivery required.

"3. Attempted gift which does not vest donee with present power and dominion over it is ineffectual as gift, either inter vivos or causa mortis.

"4. Essential element of delivery of gift is that title shall immediately vest in donee."

In that opinion the Court cites with approval the case of Johnson v Colley, 44 S. E., 721, which clearly defines the elements necessary to constitute a gift causa mortis, on page 722 as follows:

"1. It must be of personal property.

"2. The gift must be made in the last illness of the donor, while under the apprehension of death as imminent, and subject to the implied condition that if the donor recover of the illness, or if the donee die first, the gift shall be void; and

"3. Possession of the property given must be delivered at the time of the gift to the donee, or to some one for him, and the gift must be accepted by the donee."

It is contended that the decedent attempted but failed to make a testamentary disposition of his property rather than a gift causa mortis. With this we disagree. Where a testamentary disposition is attempted to be made, title to the property does not vest in the donee and the donor does not intend that title should pass until donor's death. The distinction between a gift causa mortis and a testamentary disposition is clearly stated in Johnson v Colley, supra, on page 722 as follows:

"By 'testamentary' is meant that no title whatever was to vest in the donee until the donor's death; that thus the gift was in the nature of a testament, and, not being executed in the mode prescribed in the statute of wills, it was inoperative.

"The title to every gift causa mortis must vest in the donee at the time of the gift. It vests, however, subject to certain conditions subsequent. The donor may revoke the gift during his life or it will be defeated by operation of law if the donor should recover from the illness which induced the gift, or should survive the donee. If it is not revoked or defeated by operation of law, it becomes absolute at the donor's death, but not until then."

See also **Volume 20 O. Jur. p. 45, Sec. 38;** Volume 24 Amer. Jur. p. 761, Sec. 61.

In the instant case, the decedent, while under the apprehension of death, effectually delivered to the donee personal property of his own, to wit, $2500.00 and in doing so made a declaration which evidenced his intention to then vest title in the donee subject, however, to the condition that if he should get well he would want it back. He further stated that "if anything happens to me you do whatever you see fit with it". The words, "if anything happens to me" have been construed to mean "if I die". Johnson v Colley, supra.

We are of the opinion that the decedent clearly stated his desire to vest title in the donee in praesenti.

The condition which accompanied the gift wherein decedent said "if I get well I want it back" does not operate to prevent the present vesting of title in the donee. In every gift causa mortis the law implies a revocation in the event the donor recovers from his illness; moreover the right is reserved to the donor to revoke the gift at any time before death. Thus it appears the words of the donor "if I get well I want it back" were in accord with the legal implication accompanying a gift causa mortis. The donor did not recover from the illness and did not revoke the gift. The acceptance of the gift by the donee completed a valid gift causa mortis.

In the consideration of this case we have been furnished a copy of a carefully prepared opinion of Judge McClelland of the Probate Court of Franklin County in which he discussed in a most able manner every issue in this case. We adopt his reasoning and approve of his conclusions in every particular.

Finding no error in the record the judgment is affirmed.

HORNBECK, PJ, and MILLER, J, concur.