### In re ESTATE OF McGEATH.

[Cite as *In re Estate of McGeath* (2001), 143 Ohio App.3d 835.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18680.

Decided June 1, 2001.

*Gerald E. Gunnoe*, for appellant.

*J. Timothy Cline*, for appellee.

*Paul E. Peltier*, for appellee Eaton National Bank and Trust Co.

WOLFF, Presiding Judge.

Suzanne C. Munger appeals from a judgment of the Montgomery County Court of Common Pleas, Probate Division, which sustained exceptions to the final account she had filed as executor of Joyce A. McGeath's estate.

The record reveals that on August 9, 1996, McGeath died as a result of a brain tumor. Her will was admitted to the probate court and it appointed Munger to be the executor of the estate. At the time of McGeath's death, she had $17,652.34 in a Universal 1 Credit Union Account. The disagreement in this case concerns that money.

Munger testified as follows. On the day before McGeath's death, Munger was in Michigan. During a phone conversation with McGeath, she told Munger that

she was having a second brain tumor surgery the next day and that she knew that she would "likely be a vegetable" after the surgery "or that she would pass away[.]" She told Munger that there was approximately $17,000 in her checking account. McGeath said that she would leave a check with her mother, Dorothy Yacchari, and that Yacchari would give that amount of money to Munger. McGeath told Munger that if she became a vegetable, Munger should use the money to take care of her and to make sure that she was placed in a nice nursing home. McGeath told Munger that if she died, she wanted Munger to pay her funeral expenses from the money and then to use the remaining funds to go to Italy, a place the two of them had previously planned to go together. McGeath wrote the check and gave it to Yacchari.

Munger returned to Ohio on the day of McGeath's death. When she arrived, Yacchari told Munger that she had the check. Munger told Yacchari "just hold on to" the check so that the funeral expenses could be paid from that amount. Yacchari deposited the check into her own account. Yacchari later wrote a check to the funeral home in the amount of $5,825.84. Yacchari also wrote a check to Munger for the remaining amount of $11,826.50.

Debra Shaw, McGeath's daughter, testified as follows. McGeath had two brain surgeries "within a matter of days." While McGeath was in the hospital, Shaw and other family members visited her. During one of those visits, McGeath told Shaw that she wanted the $17,652.34 to be used to take care of her if she survived. McGeath stated that if she died, the money should be used to pay her funeral expenses and any outstanding bills and that the remainder of the money was to go to her estate. McGeath told Shaw that a check was being written to Yacchari and that Yacchari was to give the check to Munger so that Munger could pay the funeral expenses and outstanding bills from that amount so that those expenses and bills would not be charged to the estate. McGeath also stated that she was writing the check "because she did not want money tied up in probate."

Munger filed the final fiduciary's account with the probate court on October 25, 2000. The account did not list the $17,652.34. The court appointed a guardian ad litem for the minor beneficiaries of the estate. On December 4, 2000, the guardian ad litem filed exceptions to the account. On that same day, some of McGeath's family members, acting as "guardians for the benefit of minors," also filed exceptions to the account. One of the exceptions filed by both asked the court to determine whether the $17,652.34 was a gift causa mortis or an asset of the estate.

A hearing was held on December 13, 2000. On January 3, 2001, the court filed its decision finding that Munger had not proven that McGeath had made the gift causa mortis and thus that the amount of $17,652.34 should have been included as

an asset in McGeath's estate. The court decided that the payment of the $5,825.84 funeral bill had been "correct," however, and decided not to disturb that amount. The court sustained the exception as to the remaining $11,826.50 and ordered that the money belonged to the estate.

On January 17, 2001, Munger filed a notice of appeal of the probate court's decision. She now raises a single assignment of error:

"The trial court erred in sustaining the exceptions of the guardian ad litem and the pro se family as to the amount of $11,826.50."

Munger argues that the trial court erred in concluding that the $11,826.50 belonged to the estate. She claims that she proved that the money was a gift causa mortis and thus such money should not have been part of McGeath's estate.

█ The essential elements of a gift causa mortis are as follows:

"1. It must be of personal property.

"2. The gift must be made in the last illness of the donor, while under the apprehension of death as imminent, and subject to the implied condition that if the donor recover[s] of the illness, or if the donee die[s] first, the gift shall be void; and

"3. Possession of the property given must be delivered at the time of the gift to the donee, or to some one for [her], and the gift must be accepted by the donee." *In re Estate of Newland* (P.C.1946), 47 Ohio Law Abs. 246, 251, 34 O.O. 235, 236, 70 N.E.2d 234, 235, affirmed (App.1946), 47 Ohio Law Abs. 252, 70 N.E.2d 238.

█ Although courts do not favor gifts causa mortis, they will be given effect when the elements are proven by clear and convincing evidence. *Id.*, 47 Ohio Law Abs. at 254, 34 O.O. at 237–238, 70 N.E.2d at 237; *Adams v. Fleck* (1961), 171 Ohio St. 451, 14 O.O.2d 313, 172 N.E.2d 126, paragraph 3(b) of syllabus.

█ Munger argues that she presented evidence to meet all of the essential elements of a gift causa mortis. While her testimony might have presented evidence to support that conclusion, Munger's testimony was disputed. Shaw's testimony contradicted Munger's testimony. Thus, the question of whether McGeath made a gift causa mortis was a question of credibility. See *Citizens Natl. Bank v. DeLuca* (Sept. 27, 2000), Crawford App. No. 3–2000–12, unreported, 2000 WL 1420273. Credibility issues are within the discretion of the trial court. *Id.* Thus, in this case we will not interfere with the trial court's determination that Munger failed to prove that McGeath made a gift causa mortis where there was competent, credible evidence that McGreath had not done so.

The assignment of error is overruled.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN and GRADY, JJ., concur.