## *In re* VAN WORMER'S ESTATE.

1. GIFTS—CAUSA MORTIS—NECESSARY ELEMENTS TO SUSTAIN.
    Claimed gift *causa mortis* cannot be sustained unless it appears from the record that at time of transaction donor believed he was suffering from an affliction from which he might not recover and from which in fact he did not.

2. SAME—NOT NECESSARY THAT DONOR BE IN EXTREMIS.
    It is not essential to gift *causa mortis* that donor be *in extremis* and that death is certain, but it is sufficient if he is apprehensive of death from present malady or imminent peril.

3. SAME—GIFT SUSTAINABLE WHERE DONOR SUFFERING FROM MELANCHOLIA COMMITTED SUICIDE.

Where donor suffering from melancholia and mental depression fought losing fight and died few months later by suicide; gift *causa mortis* was properly sustained by court below.

4. SAME—DELIVERY ESSENTIAL.

Actual or constructive delivery is essential to validity of gift either *inter vivos* or *causa mortis.*

5. SAME—DELIVERY.

Act of donor in causing certificate of stock to be issued in name of donee and by him deposited in bank constituted delivery sufficient for gift *causa mortis.*

6. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—WAIVER.

Appellant who called appellee for cross-examination under the statute (3 Comp. Laws 1929, § 14220), and questioned him as to matters equally within knowledge of deceased, waived benefit of 3 Comp. Laws 1929, § 14219, prohibiting testimony as to such matters, and appellee was properly permitted to testify thereto as witness in his own behalf.

Error to Hillsdale; Pugsley (Earl C.), J., presiding. Submitted June 9, 1931. (Docket No. 138, Calendar No. 35,675.) Decided October 5, 1931.

William P. Van Wormer, executor of the estate of Clyde E. Van Wormer; presented his final account. Clara G. Van Wormer, guardian, objected to allowance thereof. From order approving account as rendered, defendant appealed to circuit court. Judgment affirmed. Defendant reviews by error. Affirmed.

*Fred H. Aldrich* and *Wilbur D. Grommon,* for appellant.

*Paul W. Chase* and *Chandler & Culver,* for appellee.

North, J.   The probate court of Hillsdale county heard and allowed the final account of William P. Van Wormer as the executor of the estate of Clyde E. Van Wormer, deceased; $8,243.73 passed to the two children of deceased.   Clara G. Van Wormer, as guardian and next friend of these two minor children of deceased, to whom he willed his entire estate, appealed to the circuit court from the order allowing the final account.   Upon hearing before the circuit judge the order of the probate court was affirmed. The guardian and next friend for the two minors and devisees reviews by writ of error.   Clyde E. Van Wormer and Clara Van Wormer were married in 1913.   Domestic troubles developed between them, and Mrs. Van Wormer filed a bill for divorce.   Later, February 9, 1929, a property settlement was entered into whereby the husband transferred to his wife a very substantial amount of property in lieu of her dower right and all other property rights or claims as his wife.   The two children were then respectively 8 and 12 years of age.   Their care, custody, and maintenance was taken over by Mrs. Van Wormer.

Following this property settlement, and on or about February 20, 1929, Clyde E. Van Wormer left Detroit, where the family had lived and where he had been in business, and went to his mother's home at Hillsdale, Michigan.   The record conclusively shows that he was then in a serious state of mental depression in consequence of the status of his domestic and business affairs.   Mentally he was a sick man, as appears from the testimony which we will quote in part.   He told his mother that he was going to California, that he would not stay here, but must go just as far away as he could from his troubles. He visited his brother William P. Van Wormer (re-

ferred to in the record as Paul) in Lansing and on February 26th he turned over to his brother $3,200 to be invested in stock of the Federal Screw Corporation. This stock was purchased through Mr. Fred C. Ruch, a Lansing broker. The broker asked deceased in whose name the stock should be issued, and deceased replied:

"Well, put it in Paul's name, because if anything happens to me it will all be his anyway."

The stock was so issued, but it was deposited as collateral to a bank loan of $3,600 made to deceased. The proceeds of this loan were used in this stock investment. Paul sold the stock at a profit of substantially $500. Appellant claims that the $3,200 of decedent's money invested in this stock and the resultant profit of $500 should be accounted for by the executor as a part of the estate of Clyde E. Van Wormer. Appellee claims it as a gift *causa mortis*. In both the probate court and the circuit court it was held that the stock passed from the deceased to his brother as a gift *causa mortis.* As bearing upon the nature and purpose of placing the stock in Paul's name, a further statement of facts is necessary. During the evening of the day deceased and his brother decided to purchase the stock, the former said to the latter:

"It (the stock) is in your name anyway; if anything happens to me and I don't come back, it's yours."

At the time of the arrangement for purchasing the stock (February 26, 1929), Clyde E. Van Wormer went to the office of a Lansing attorney and executed his will, in which he gave all his property to his two children, and named his brother Paul as executor. After an absence of about a week Clyde

returned to his mother's home, where he remained until starting for California on March 8, 1929. The day before he left he took from the First National Bank of Hillsdale a certificate of deposit for $2,916.50 payable to himself or his mother or to the survivor. He delivered this certificate to his mother under circumstances disclosed by the testimony later quoted. It is appellee's claim that in the manner above outlined Clyde E. Van Wormer arranged practically equal gifts in the event of his death to his mother and his brother; and that he left the balance of his estate to his children. He retained in his own possession $1,500 for use on the California trip. In this connection, deceased said to his mother:

" 'I'm going to take $1,500 with me, and that will take care of me until I am able to work, and the rest I'm going to divide between you and Paul before I go;' that's the exact words he said."

The journey to California was made in an automobile by way of Texas. He seems to have arrived in San Diego, California, on March 21st. On April 9th, he wrote back to Paul:

"There is no use denying to you that my trip out here has been a long dark ride."

He wrote further of his location at an ocean beach hotel, of playing golf, and added:

"I am gradually getting a desire to want to live and associate with people again. Am living very quietly, usually in my room by nine o'clock, where I read and think and try to find myself."

Other communications indicated a constant effort on the part of the deceased to rid himself of his mental depression. Sometimes he was encouraged, other times discouraged. On May 7, 1929, he ended it all by suicide.

The claimed gift *causa mortis* cannot be sustained unless it appears from the record that at the time of the transaction the donor believed he was suffering from an affliction from which he might not recover and from which in fact he did not. Concerning Clyde E. Van Wormer's condition, we quote quite at length from the record. Mr. Ruch, the broker, testified:

"He (Clyde E. Van Wormer) wasn't cheerful. He spent several weeks before this time, he spent the entire—I think one Saturday afternoon with his brother at the house. He was quite depressed at that time. * * * I'd seen him a number of times before this time, and he didn't act natural or normal; he didn't act as he had acted previously. * * * He had talked about sleepless nights, and he even carried medicine with him to assist him in sleeping, * * * Clyde didn't joke or laugh. We tried to get him to but he didn't have it in him. About the best explanation I can give is he seemed depressed."

The mother of deceased, Mrs. Mary E. Van Wormer, testified:

"*Q.* And when he came home, about the 20th of February, what was the condition of his mind, as you observed it?

"*A.* Well, he was depressed, of course; he had left everything behind that his life had meant to him, and came home to me. * * * He said, 'Mother, this little grip is all I have got left of my life's work.' * * * He announced * * * when he (first) came home that he was going on to California. * * * I tried to persuade him not to go, but he felt that he must * * * get just as far away as he could from his troubles; that is the way he expressed it to me; he said, 'No, I can't stay here; I have got to get away just as far as I can.' * * * Before he started to California

* * * he gave me a certificate of deposit on the bank; he had been down town, and he expected to go on Thursday morning, and it was Wednesday that he came up from town and gave me that certificate of deposit. ($2,916.50) * * * I said 'Then— Oh you have deposited this in the bank, and if you want any money you are to call on me for it?' 'Yes,' he said, and then in a moment he said, 'Why, I can't cash that check, but you can.' * * * I say his physical condition was good; he was suffering from a nervous breakdown.''

William Paul Van Wormer testified concerning his brother's condition:

''He was mentally sick, wasn't able to work. * * * He did not have much trouble in the day-time; it was at night he had his troubles. He did not sleep; all he wanted to do was talk about his troubles and he would go over it and he would go around it and in a circular way, the same thing over again a hundred times. Sometimes he would be all right but mostly he had his troubles at night.''

Concerning the stock transaction, this witness testified:

''I considered at the time that he gave me this money and I went and negotiated the loan that it was his investment entirely. He told me that night we were discussing the matter, 'Now,' I said, 'In case this stock goes up and it should be sold,' 'Why,' he says, 'It is in your name anyway,' he says, 'if anything happens to me and I don't come back, it's yours.' Well, now, I considered right up until the time I heard of his death that it was his stock.''

We will not quote further. We find ample testimony in this record to sustain the circuit judge's finding that at the time of the gift Clyde E. Van Wormer—

"was suffering from a mental breakdown, that he was suffering pains and agonies on account thereof quite as acute and as severe as in the case of most physical ailments, which continued from the time decedent came to the city of Hillsdale, about the 20th of February, 1929, to the time of his death, on or about the 7th of May, 1929."

Gifts *causa mortis* are discussed in *Re Reh's Estate,* 196 Mich. 210; and there is no occasion for reviewing the subject here. That case holds:

"It is not essential to a gift *causa mortis* that the donor be *in extremis* and that death is certain, but it is sufficient if he is apprehensive of death from present malady or imminent peril." (Syllabus.)

The melancholia which evidently resulted in suicide had fastened itself upon deceased before the date of the gift, and he obviously was convinced at that time that he could not continue on indefinitely in his depressed mental state. He attempted to travel away from his troubles. Weeks later he wrote, as quoted above, that he was then gradually getting a desire to want to live, and added in the same letter that he was then experiencing his first encouragement, and that he would probably return the middle of the summer, "provided I meet with any measure of improvement." The end a month later indicates he fought a losing fight. His gift made in contemplation should not be set aside.

Lack of delivery is intimated in appellant's brief, but it is not particularly stressed. Actual or constructive delivery is essential to the validity of a gift either *inter vivos* or *causa mortis. State Bank of Croswell* v. *Johnson,* 151 Mich. 538. The act of deceased in causing the certificate of stock to be issued in the name of appellee and by him deposited

in the bank constituted delivery sufficient for a gift *causa mortis*. The certificate remained in appellee's name and in the bank's possession until the sale of the stock; and then the proceeds of the sale were placed in appellee's savings account, where they remained until the donor's death. All this seems to have been in accordance with decedent's plans. There is no showing to the contrary. A more complete delivery to the donee and a more continuous and exclusive possession by him would be difficult to conceive. See *Curtis* v. *Hitchings,* 243 Mich. 18.

"An examination of the modern cases all show, while courts will scrutinize with care the evidence upon which gifts *causa mortis* are sought to be sustained, and will require in every case clear and convincing proof, yet, when it is once ascertained that it is the intention of the donor to make such a gift, and all is done which is possible under the circumstances in the matter of delivery, the gift will be sustained." *Scott* v. *Union & Planters' Bank & Trust Co.,* 123 Tenn. 258, 283 (130 S. W. 757).

See, also, *Begovich* v. *Kruljac,* 38 Wyo. 365 (267 Pac. 426, 60 A. L. R. 1046).

In the circuit court appellant objected to the testimony of William P. Van Wormer as to matters' equally within the knowledge of the deceased. 3 Comp. Laws 1929, § 14219. The circuit judge overruled the objection, holding that the statutory prohibition had been waived. Appellant called this witness for cross-examination under the statute, and practically at the outset the following questions were asked by appellant's attorney:

"*Q.* At that time did he (Clyde E. Van Wormer) hand to you a certain amount of money?

"*A.* You mean at the time he made the will?

"*Q.* Yes.

"*A*. No, sir.

"*Q*. Did he before or after that time?

"*A*. Before, sir.

"*Q*. How long before he made the will?

"*A*. Oh, I would say a few hours. It was the same day.

"*Q*. It was the same day?

"*A*. Yes, sir.

"*Q*. How much money did he give you at that time, or hand to you?

"*A*. $3,200."

All this was equally within the knowledge of deceased. There is considerable other testimony of like character in the record. Clearly the circuit judge was correct in holding that appellant had waived the statutory provision. See *Fox* v. *Barrett's Estate*, 117 Mich. 162; *Bishop* v. *Shurly*, 237 Mich. 76, and cases cited. Consideration has been given to each of appellant's assignments of error, but we find no reason for disagreeing with the judgment of the trial court, which is affirmed, with costs to appellee.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.