ROBERT SCHERER, PLAINTIFF-RESPONDENT, v. ROBERT HYLAND, ADMINISTRATOR OF THE ESTATE OF CATHERINE WAGNER, DECEASED, DEFENDANT-APPELLANT.

Argued September 20, 1977—Decided December 5, 1977.

128

*Mr. Herbert M. Barnes* argued the cause for defendant-appellant.

*Mr. David A. Nicolette* argued the cause for plaintiff-respondent (*Messrs. Tumarkin and Nicolette,* attorneys; *Mr. Nicolette* and *Mr. Robert J. Rudy, Jr.,* on the brief).

PER CURIAM. Defendant, the Administrator *ad litem* of the Estate of Catherine Wagner, appeals from an Appellate Division decision, one judge dissenting, affirming a summary judgment by the trial court holding that Ms. Wagner had made a valid gift *causa mortis* of a check to plaintiff. We affirm.

The facts are not in dispute.[1] Catherine Wagner and the plaintiff, Robert Scherer, lived together for approximately fifteen years prior to Ms. Wagner's death in January 1974. In 1970, the decedent and plaintiff were involved in an auto-

---

[1] A more detailed statement of the facts may be found in the Appellate Division decision. A summary is given here only to clarify the issue presented.

mobile accident in which decedent suffered facial wounds and a broken hip. Because of the hip injury, decedent's physical mobility was substantially impaired. She was forced to give up her job and to restrict her activities. After the accident, plaintiff cared for her and assumed the sole financial responsibility for maintaining their household. During the weeks preceding her death, Ms. Wagner was acutely depressed. On one occasion, she attempted suicide by slashing her wrists. On January 23, 1974, she committed suicide by jumping from the roof of the apartment building in which they lived.

On the morning of the day of her death, Ms. Wagner received a check for $17,400 drawn by a Pennsylvania attorney who had represented her in a claim arising out of the automobile accident. The check represented settlement of the claim. Plaintiff telephoned Ms. Wagner at around 11:30 A.M. that day and was told that the check had arrived. Plaintiff noticed nothing unusual in Ms. Wagner's voice. At about 3:20 P.M., decedent left the apartment building and jumped to her death. The police, as part of their investigation of the suicide, asked the building superintendent to admit them to the apartment. On the kitchen table they found the check, endorsed in blank, and two notes handwritten by the decedent. In one, she described her depression over her physical condition, expressed her love for Scherer, and asked him to forgive her "for taking the easy way out." In the other, she indicated that she "bequeathed" to plaintiff all of her possessions, including "the check for $17,400.00 * * *." The police took possession of the check, which was eventually placed in an interest-bearing account pending disposition of this action.

Under our wills statute it is clear that Ms. Wagner's note bequeathing all her possessions to Mr. Scherer cannot take effect as a testamentary disposition. *N. J. S. A.* 3A:3–2. A *donatio causa mortis* has been traditionally defined as a gift of personal property made by a party in expectation of death, then imminent, subject to the condition that the donor

die as anticipated. Establishment of the gift has uniformly called for proof of delivery.

The primary issue here is whether Ms. Wagner's acts of endorsing the settlement check, placing it on the kitchen table in the apartment she shared with Scherer, next to a writing clearly evidencing her intent to transfer the check to Scherer, and abandoning the apartment with a clear expectation of imminent death constituted delivery sufficient to sustain a gift *causa mortis* of the check. Defendant, relying on the principles established in *Foster v. Reiss,* 18 *N. J.* 41 (1955), argues that there was no delivery because the donor did not unequivocally relinquish control of the check before her death. Central to this argument is the contention that suicide, the perceived peril, was one which decedent herself created and one which was completely within her control. According to this contention, the donor at any time before she jumped from the apartment roof could have changed her mind, re-entered the apartment, and reclaimed the check. Defendant therefore reasons that decedent did not make an effective transfer of the check during her lifetime, as is required for a valid gift *causa mortis.*

The majority and dissenting opinions in *Foster v. Reiss* contain thorough analyses of the evolution of the delivery requirement of the gift *causa mortis. See also* Mechem, "The Requirement of Delivery in Gifts of Chattels and of Choses in Action Evidenced by Commercial Instruments," 21 *Ill. L. Rev.* 341, 457, 568 (1926); Bruton, "The Requirement of Delivery as Applied to Gifts of Choses in Action," 39 *Yale L. J.* 837 (1930). For commentary on *Foster v. Reiss,* see Bordwell, "Testate and Intestate Succession," 10 *Rutgers L. Rev.* 293, 297 (1955); Note, 10 *Rutgers L. Rev.* 457 (1955); Note, 54 *Mich. L. Rev.* 572 (1956). We see no need to retrace that history here.

There is general agreement that the major purpose of the delivery requirement is evidentiary. Proof of delivery reduces the possibility that the evidence of intent has been fabricated or that a mere donative impulse, not consummated by

action, has been mistaken for a completed gift. Since "these gifts come into question only after death has closed the lips of the donor," the delivery requirement provides a substantial safeguard against fraud and perjury. *See Keepers v. Fidelity Title and Deposit Co.*, 56 *N. J. L.* 302, 308 (E. & A. 1893). In *Foster,* the majority concluded that these policies could best be fulfilled by a strict rule requiring actual manual tradition of the subject-matter of the gift except in a very narrow class of cases where "there can be no actual delivery" or where "the situation is incompatible with the performance of such ceremony." 18 *N. J.* at 50. Justice Jacobs, in his dissenting opinion (joined by Justices Brennan and Wachenfeld) questioned the reasonableness of requiring direct physical delivery in cases where donative intent is "freely and clearly expressed in a written instrument." *Id.* at 56. He observed that a more flexible approach to the delivery requirement had been taken by other jurisdictions and quoted approvingly from *Devol v. Dye,* 123 *Ind.* 321, 24 *N. E.* 246, 7 *L. R. A.* 439 (Sup. Ct. 1890). That case stated:

[G]ifts *causa mortis* * * * are not to be held contrary to public policy, nor do they rest under the disfavor of the law, when the facts are clearly and satisfactorily shown which make it appear that they were freely and intelligently made. Ellis v. Secor, 31 Mich. 185. While every case must be brought within the general rule upon the points essential to such a gift, yet, as the circumstances under which donations *mortis causa* are made must of necessity be infinite in variety, each case must be determined upon its own peculiar facts and circumstances. Dickeschild v. Bank, 28 W. Va. 341; Kiff v. Weaver, 94 N. C. 274. The rule requiring delivery, either actual or symbolical, must be maintained, but its application is to be militated and applied according to the relative importance of the subject of the gift and the condition of the donor. The intention of a donor in peril of death, when clearly ascertained and fairly consummated within the meaning of well-established rules, is not to be thwarted by a narrow and illiberal construction of what may have been intended for and deemed by him a sufficient delivery * * *.[24 *N. E.* at 248]

The balancing approach suggested in *Devol v. Dye* has been articulated in the following manner:

Where there has been unequivocal proof of a deliberate and well-considered donative intent on the part of the donor, many courts have been inclined to overlook the technical requirements and to hold that a "constructive" or "symbolic" delivery is sufficient to vest title in the donee. However, where this is allowed the evidence must clearly show an intention to part presently with some substantial attribute of ownership. [*Gordon v. Barr*, 13 *Cal.* 2d 596, 601, 91 *P.* 2d 101, 104 (Sup. Ct. Cal. 1939)][2]

In essence, this approach takes into account the purposes served by the requirement of delivery in determining whether that requirement has been met. It would find a constructive delivery adequate to support the gift when the evidence of donative intent is concrete and undisputed, when there is every indication that the donor intended to make a present transfer of the subject-matter of the gift, and when the steps taken by the donor to effect such a transfer must have been deemed by the donor as sufficient to pass the donor's interest to the donee. We are persuaded that this approach, which does not minimize the need for evidentiary safeguards to prevent frauds upon the estates of the deceased, reflects the realities which attend transfers of this kind.

In this case, the evidence of decedent's intent to transfer the check to Robert Scherer is concrete, unequivocal, and undisputed. The circumstances definitely rule out any possibility of fraud. The sole question, then, is whether the steps taken by the decedent, independent of her writing of the suicide notes, were sufficient to support a finding that she effected a lifetime transfer of the check to Scherer. We think that they were. First, the act of endorsing a check represents, in common experience and understanding, the only act needed (short of actual delivery) to render a check negotiable. The significance of such an act is universally understood. Accordingly, we have no trouble in viewing Ms. Wagner's endorsement of the settlement check as a substantial step taken

---

2For another application of this approach, see Mechem, *supra*, 21 *Ill. L. Rev.* 457 at 481.

by her for the purpose of effecting a transfer to Scherer of her right to the check proceeds. Second, we note that the only person other than the decedent who had routine access to the apartment was Robert Scherer. Indeed, the apartment was leased in his name. It is clear that Ms. Wagner before leaving the apartment placed the check in a place where Scherer could not fail to see it and fully expected that he would take actual possession of the check when he entered. And, although Ms. Wagner's subsequent suicide does not itself constitute a component of the delivery of this gift, it does provide persuasive evidence that when Ms. Wagner locked the door of the apartment she did so with no expectation of returning. When we consider her state of mind as it must have been upon leaving the apartment, her surrender of possession at that moment was complete. We find, therefore, that when she left the apartment she completed a constructive delivery of the check to Robert Scherer. In light of her resolve to take her own life and of her obvious desire not to be deterred from that purpose, Ms. Wagner's failure manually to transfer the check to Scherer is understandable. She clearly did all that she could do or thought necessary to do to surrender the check. Her donative intent has been conclusively demonstrated by independent evidence. The law should effectuate that intent rather than indulge in nice distinctions which would thwart her purpose. Upon these facts, we find that the constructive delivery she made was adequate to support a gift *causa mortis.*

Defendant's assertion that suicide is not the sort of peril that will sustain a gift *causa mortis* finds some support in precedents from other jurisdictions. *E. g., Ray v. Leader Federal Sav. & Loan Ass'n,* 40 *Tenn. App.* 625, 292 *S. W.* 2d 458 (Ct. App. 1953). *See generally Annot.,* "Nature and validity of gift made in contemplation of suicide," 60 *A. L. R.* 2d 575 (1958). We are, however, not bound by those authorities nor do we find them persuasive. While it is true that a gift *causa mortis* is made by the donor with a view to impending death, death is no less impending because of a

resolve to commit suicide. Nor does that fixed purpose constitute any lesser or less imminent peril than does a ravaging disease. Indeed, given the despair sufficient to end it all, the peril attendant upon contemplated suicide may reasonably be viewed as even more imminent than that accompanying many illnesses which prove ultimately to be fatal. *Cf. Berl v. Rosenberg,* 169 *Cal. App.* 2d 125, 336 *P.* 2d 975, 978 (Dist. Ct. App. 1959) (public policy against suicide does not invalidate otherwise valid gift *causa mortis*). And, the notion that one in a state of mental depression serious enough to lead to suicide is somehow "freer" to renounce the depression and thus the danger than one suffering from a physical illness, although it has a certain augustinian appeal, has long since been replaced by more enlightened views of human psychology. *In re Van Wormer's Estate,* 255 *Mich,* 399, 238 *N. W.* 210 (Sup. Ct. 1931) (melancholia ending in suicide sufficient to sustain a gift *causa mortis*). We also observe that an argument that the donor of a *causa mortis* gift might have changed his or her mind loses much of its force when one recalls that a *causa mortis* gift, by definition, can be revoked at any time before the donor dies and is automatically revoked if the donor recovers.

 Finally, defendant asserts that this gift must fail because there was no acceptance prior to the donor's death. Although the issue of acceptance is rarely litigated, the authority that does exist indicates that, given a valid delivery, acceptance will be implied if the gift is unconditional and beneficial to the donee. *See, e. g., Sparks v. Hurley,* 208 *Pa.* 166, 57 *A.* 364, 366 (Sup. Ct. 1904) ; *Graham v. Johnston,* 243 *Iowa* 112, 49 *N. W.* 2d 540, 543 (Sup. Ct. 1951). The presumption of acceptance may apply even if the donee does not learn of the gift until after the donor's death. *Taylor v. Sanford,* 108 *Tex.* 340, 344, 193 *S. W.* 661, 662 (Sup. Ct. 1912) (assent to gift of deed mailed in contemplation of death but received after grantor's death should be presumed unless a dissent or disclaimer appears). A donee cannot be expected to accept or reject a gift until he learns

of it and unless a gift is rejected when the donee is informed of it the presumption of acceptance is not defeated. *See id.* at 344, 193 *S. W.* at 662. Here the gift was clearly beneficial to Scherer, and he has always expressed his acceptance.

Judgment affirmed.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For reversal*—None.