# S. HING WOO

v.

# JOHN S. SMART, ADMINISTRATOR, ETC.

Record No. 930698

April 15, 1994

Present: All the Justices

*Michael G. Bowen (Bourdow & Bowen,* on briefs), for appellant.
*John S. Smart (Smart & Hunton,* on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

The principal issue in this equity suit is whether the trial court erred in ruling that the donee of three checks is not entitled to the check proceeds as gifts causa mortis.

William D. Yee and the appellant S. Hing Woo, unmarried residents of Chesterfield County, had an intimate relationship for almost 20 years until Yee died intestate in March 1989. During the two days before his death, the decedent handed to Woo three personal checks payable to her order in the amounts of $80,000.00, $42,700.00, and $1,900.00, respectively. The day after decedent's death, she presented the latter two checks and the proceeds were paid to her. The check for $80,000.00 has never been presented for payment.

In May 1989, appellee John S. Smart qualified as administrator of the decedent's estate. In December 1989, the administrator filed a bill

of complaint for declaratory judgment against the donee, alleging that the three checks were not effective gifts because they were not presented for payment and paid prior to the decedent's death. Thus, the administrator asked the court to declare that the donee is not entitled to receive any part of the decedent's estate to satisfy the $80,000.00 check. In addition, the administrator asked for judgment against the donee in the amount of $44,600.00 representing the sum of the two checks that were cashed.

Also, the administrator alleged that, in addition to a number of bank accounts, the decedent owned various securities registered in his name alone valued at $53,165.00 and the donee claims entitlement to at least one-half of those funds. The administrator asked the court to declare that the donee has no interest in those securities.

In a second amended answer and cross-bill, the donee admitted receipt of the checks and asked the court to declare that she is entitled to the proceeds of the checks as gifts causa mortis or, alternatively, upon the theory of constructive trust. Also, the donee asked the court to declare that she is entitled to at least one-half of the value of the securities registered in the decedent's name at death due to contributions she made to the stock account during the time of the "confidential relationship" that existed between the pair during decedent's lifetime.

The chancellor received testimonial and documentary evidence during an ore tenus hearing. Subsequently, in a letter opinion, the chancellor ruled that the donee was not entitled to the check proceeds and that the donee had failed to establish entitlement to any portion of the securities or accounts listed in the decedent's name at death. We awarded the donee this appeal from the February 1993 final decree, which provided for judgment against the donee in the amount of $44,600, plus interest. The donee has paid this sum to the administrator pending appeal.

The facts relevant to the transfer of the three checks are virtually undisputed. When there is a conflict, however, we will view the facts in the light most favorable to the administrator, who prevailed below, in accord with settled appellate principles.

Born in China, the decedent and the donee met in connection with the operation of a Richmond-area restaurant that was established by her father in the 1970s. The decedent, age 51 when he died, had a high school education; she, age 39 when he died, had "finished" college.

He became manager of the restaurant and she assisted him in its operation. They were "like husband and wife," occasionally living

together, and maintained a close relationship that lasted for 19 years. In 1985, he was diagnosed with coronary heart disease.

The decedent had brothers and sisters living in Hong Kong, Canada, and New York, from some of whom he was estranged. He resided in a small house near the restaurant with a younger brother; she resided with her mother and two brothers at a different location.

He trusted her "with all his accounts." When checks were to be drawn on his individual checking accounts, she wrote the checks "and he signed them."

On March 27, 1989, two days before his death, the decedent complained to the donee "that he was feeling terribly bad" and that he believed death was imminent. Against her advice "to stay home and take a rest," he came to the restaurant "to take care of some money in his bank." During the evening, he "gave" her the $42,700.00 check drawn on Signet Bank to "close out" his account there. The "same night," he "gave" her the $80,000.00 check drawn on Central Fidelity Bank to represent the value of "various" savings accounts at that bank. During the next day, March 28, 1989, still "feeling badly," the decedent returned to the restaurant and handed the donee the $1,900.00 check to "close out" his checking account at Central Fidelity Bank. These checks were given to the donee so that she would be "provided for"; the decedent told her that he "wanted" her "to have the money if he died."

The decedent died in a hospital emergency room on March 29, 1989; none of the checks had been cashed. The donee received the proceeds of the two checks on the day after death. The check for $80,000.00 was never presented because it represented funds in savings accounts and there were insufficient funds in the checking account to cover it.

In Virginia, we recognize two kinds of gifts: gifts inter vivos and gifts causa mortis, those made in apprehension of death. Here, the donee claims gifts of the second category, in which the distinctive elements are well settled.

■ First, there must be an intent to make a gift. *Snidow* v. *First Nat'l Bank,* 178 Va. 239, 245, 16 S.E.2d 385, 387 (1941). *See Brown* v. *Metz,* 240 Va. 127, 131, 393 S.E.2d 402, 404 (1990). Second, the gift must be of personal property. *King* v. *Merryman,* 196 Va. 844, 855, 86 S.E.2d 141, 147 (1955). Third, the gift must be made while the donor is under the apprehension of imminent death, upon the essential condition that the property shall belong to the donee if the donor dies as anticipated leaving the donee surviving, and the gift is not revoked in the meantime. *Id.* Fourth, possession of the property given must be

delivered at the time of the gift to the donee, or to someone for the donee, and the donee must accept the gift. *Johnson* v. *Colley,* 101 Va. 414, 416, 44 S.E. 721, 722 (1903).

▪ And, the donee must establish the gift causa mortis by clear and convincing evidence. *Quarles* v. *Fowlkes,* 147 Va. 493, 508, 137 S.E. 365, 369 (1927).

▪ In ruling that no valid gifts causa mortis were made, the trial court determined that the donee had established all but one of the essential elements. The court found that the decedent fully intended to make gifts of money to the donee; the evidence clearly showed the decedent wanted to provide for her if he died and the checks were handed to her for that purpose. The court also ruled that the attempted gifts of money (personal property) were made while the decedent was under the apprehension of immediate death and upon condition that the property belong to the donee if the decedent died as expected.

The trial court found, however, that the gifts failed "because delivery of the checks did not constitute delivery of the object of the gifts themselves; that is, the money in the bank." The donee contends that this ruling was erroneous. We disagree.

The narrow question presented is whether, paraphrasing *Johnson,* possession of the property given (the money) was delivered to the donee at the time of the alleged gift. Stated differently, the inquiry is whether a check can be the proper subject of a gift causa mortis, a question of first impression for this Court.

▪ We adopt the majority rule elsewhere that a donor's own check drawn on a personal checking account is not, prior to acceptance or payment by the bank, the subject of a valid gift causa mortis. *See, e.g., Basket* v. *Hassell,* 107 U.S. 602, 613 (1882). *See also* L.S. Tellier, Annotation, *Donor's Own Check as Subject of Gift,* 38 A.L.R.2d 594, 597 (1954). Generally, although there is contrary authority, the determination whether delivery of the donor's own check is such a gift depends upon "whether the transaction is regarded as amounting to an assignment of the portion of the deposit indicated by the check." 38 A.L.R.2d at 596.

▪ The Uniform Commercial Code (U.C.C.) makes clear that transfer of a check does not operate as an assignment of money on deposit. Former Code § 8.3-409(1) (now in substance § 8.3A-408), applicable to this dispute, provided: "A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." Because the check does not operate as an assignment of the funds, mere delivery of a check does not place

the gift beyond the donor's power of revocation and the check simply becomes an unenforceable promise to make a gift. 38 A.L.R.2d at 596.

■ In addition, the required delivery must be "actual and complete, such as deprives the donor of all further control and dominion." *Quarles,* 147 Va. at 507, 137 S.E. at 369. Until the check is paid, the donor retains control and dominion over the funds and the gift is incomplete; the donor could stop payment or write another check for the funds payable to a third person, or the donor may die, thus revoking the donor-drawer's command to the drawee bank to pay the money. *Sturgill* v. *Virginia Citizens Bank,* 223 Va. 394, 398, 291 S.E.2d 207, 209 (1982) (death of principal terminates agent's authority that is not coupled with an interest).

■ Accordingly, as the trial court ruled, while three checks were delivered by the decedent to the donee, "no *money* was delivered." Because no money was delivered, no money successfully can be claimed by the donee as a gift causa mortis.

We reject the donee's contention that the foregoing section of the U.C.C. "was meant to protect banks against a holder of a check, not to address the rights of other non-bank parties as to the funds on deposit in the account." The statute is clear and unambiguous; it is not limited as the donee suggests.

And, contrary to the donee's argument, the Official Comment to the section does not require these gifts to be validated. After noting that "a check or other draft does not of itself operate as an assignment in law or equity," the Comment states that an "assignment may, however, appear from other agreements, express or implied; and when the intent to assign is clear the check may be the means by which the assignment is effected." The donee argues, "If one could never use a check for an assignment, this official comment has no meaning." But it is the statute that would be rendered meaningless if the Comment were applied to authenticate the gifts in this case, in which there is the effort to validate the gratuitous promise of a deceased donor.

Alternatively, the donee argues that even if the trial court correctly concluded "that the requirement of delivery was not met," the court erred in refusing to impose a constructive trust in her favor on funds representing the amounts of the checks. We disagree.

■ To impose a constructive trust under these circumstances, which certainly present a sympathetic case for equitable relief, would eviscerate the doctrine of gift causa mortis and eliminate delivery as an essential element. Intent to make a gift causa mortis, no matter how clear, cannot overcome the lack of delivery and validate the gift under the guise of imposing a constructive trust.

Finally, we reject the donee's argument that the trial court erred in not declaring a constructive or resulting trust in her favor, and in failing to find that the estate has been unjustly enriched, with regard to the stock account and "excess proceeds" contributed by her to the decedent's bank accounts. She says that she presented adequate, uncontradicted evidence on this issue, which the trial court should have accepted.

The parties had separate accounts in their individual names. Occasionally, each deposited money into the other's account. The donee offered evidence that she deposited substantial funds into the decedent's accounts, in part so that the couple could eventually purchase a home. The evidence was uncontradicted, however, that the decedent alone had always paid taxes on the income derived from the accounts in his name.

The trial court made the factual finding that the donee "failed to carry her burden of proving what amounts she contributed to the subject securities and accounts, and that those securities and accounts were intended to be joint property." The record fully supports the trial court's finding, which is binding on appeal.

Consequently, we hold there is no error in the judgment below and it will be

*Affirmed.*