# CIRCUIT COURT OF THE CITY OF NORFOLK

NationsBank of Va. et al.

v.

Stephen J. Friedman

May 18, 1995

Case No. C94-1576

BY JUDGE CHARLES E. POSTON

This cause is, in essence, a fraud suit in which the plaintiffs allege that the defendant, Stephen J. Friedman, has taken possession of property of his late mother, Edna K. Friedman, to the detriment of those persons and entities named in her Last Will and Testament. A brief summary of the facts thus far revealed is warranted.

Edna Friedman had been widowed for two years before her death. She and her late husband, Bernard Friedman, adopted one child, the defendant, Stephen J. Friedman. Edna Friedman and her husband evidently suffered a troubled relationship with their son, culminating on September 24, 1992, when she executed her Last Will and Testament which disinherited her son in the following words:

> I have not made any provision in this Will for my adopted son, Stephen, in the belief that my deceased husband, Bernard Friedman,

and I have been sufficiently supportive of Stephen during our lifetimes and in helping him to support himself.

That will also named the plaintiffs as executors. On that same date, Edna Friedman executed a general "Durable Power of Attorney" naming the plaintiff, Robert C. Nusbaum, her attorney-in-fact.

Prior to her husband's death, Edna Friedman had purchased a Flexible Premium Deferred Annuity for $59,318.56 from Alexander Life Insurance Company of America, naming her husband primary beneficiary and Stephen Jay Friedman contingent beneficiary. However, on March 31, 1992, five months prior to her death, Edna Friedman deleted Stephen as a beneficiary of that Annuity. In the stipulated facts, there is no explanation of the rift between mother and son nor are there any indications of reconciliation between them (unless her execution of a power of attorney naming Stephen as her attorney-in-fact be such an indication).

Edna Friedman was admitted to DePaul Hospital in late May or early June, 1994, with heart problems and other related problems. She was also a patient in that hospital from August 10, 1994, to August 12, 1994; and again from August 14, 1994, to August 16, 1994. Each of those admissions resulted from heart problems and complications therefrom. Edna Friedman's final hospitalization commenced on August 22, 1994, when she was admitted through the emergency room with heart problems and accompanying complications. A member of the hospital staff gave her handbag to Stephen Friedman or to Sheila Friedman, and Stephen Friedman took the handbag to his home.

Using a key from Edna Friedman's handbag, Stephen Friedman entered her house and discovered therein certificates of deposit, annuities, and mutual fund records, all of which he took into his custody. On August 24, 1994, Edna Friedman executed a general power of attorney in which she named Stephen J. Friedman her attorney-in-fact. The Court's file is devoid of any information indicating that Edna Friedman had any apprehension of death when she executed this power of attorney. That document was prepared at Stephen J. Friedman's request by his attorney, Steven F. Shames, Esquire. Nothing in the Court's file indicates that Mr. Shames ever had any personal or professional relationship with Edna Friedman.

Beginning August 26, 1994, and continuing until August 30, 1994, the date of Edna Friedman's death, the defendant took many actions concerning her property under authority of the power of attorney. Most, if not all, of his actions inured to the personal benefit of himself or members of his own immediate family. There is no indication in the Court's file that Edna

Friedman had any history of making gifts to the defendant or members of his immediate family. This suit results from the actions taken by Stephen J. Friedman under color of the power of attorney given him by his mother six days prior to her death.

On April 27, 1995, the Court heard oral argument on several motions and invited memoranda of law on those motions. Counsel submitted the memoranda, which the Court has considered. The motions before the Court, then, are stated in the order presented by the plaintiffs.

I. Plaintiffs' Motion In Limine.

II. Defendant's Motion to use the deposition of Steven F. Shames, Esquire, in lieu of his personal appearance at trial.

III. Motion of Steven F. Shames, Esquire, to quash a subpoena *duces tecum* directed to him.

IV. Plaintiff's Motion to Preclude Use of Certain Testimony in Shames' Deposition.

V. Plaintiffs' Motion for Summary Judgment.

VI. Defendant's Motion to Strike certain answers to interrogatories.

## I. *Plaintiffs' Motion in Limine*

The plaintiffs' have filed a three-part motion in limine seeking to exclude certain evidence which may be offered by the defendant. I shall address each part stated in the plaintiffs' motion.

A. *Any testimony by any witness as to statements made to such witness by any other person concerning statements allegedly made to such other person by Edna K. Friedman, to which alleged statements the witness was not a party.*

In their reply brief filed on May 8, 1995, the plaintiffs refer to this part of their motion as an objection to "double hearsay." Objectionable evidence consists of alleged statements that Edna Friedman made to Witness A who then related the statements to Witness B. The objection goes to whether Witness B could testify to Edna Friedman's statement.

The Court believes that this "double hearsay" is too unreliable to be admitted. Indeed, the hearsay rule itself is designed to insure the reliability of testimony. There are, to be sure, numerous exceptions to the hearsay rule; however, this testimony is not admissible under any of those exceptions. If one of the witnesses in this chain were the defendant, the reliability of the evidence would be even more suspect. This is so because the defendant stands to gain

personally should his actions taken under authority of the power of attorney be upheld.

Therefore, the Court grants the plaintiffs' Motion in Limine as to paragraph one.

B. *Any testimony as to oral statements allegedly made by Edna K. Friedman. between August 21, 1994, and the time of her death on August 30, 1994, inclusively, purporting to be an authorization to Stephen J. Friedman to transfer by gift any property belonging to Edna K. Friedman.*

The plaintiffs seek to bar "*any testimony*" as to oral statements allegedly made by Edna Friedman appearing to grant the defendant authority to transfer her property by gift under the power of attorney. Certainly, such proof, if offered, would tend to show that Edna Friedman authorized the defendant to make, on her behalf, gifts *causa mortis*, as her attorney-in-fact.

Powers of attorney are to be strictly construed, and language must be given its plain meaning. A power should be liberally construed in favor of the principal's intent. 14B M.J., *Powers*, § 4. Thus, it has been held:

> The guiding principle is that in determining whether an attorney in fact has certain powers, courts should first seek the principal's intent as manifest in the instrument itself, and look to surrounding circumstances only to clarify ambiguity in the instrument.

*Estate of Casey v. Commissioner of Internal Revenue*, 948 F.2d 895, 900 (4th Cir. 1991) (*citing Hotchkiss v. Middlekauf*, 96 Va. 649 (1899)).

While there is no stipulation concerning the circumstances surrounding the drafting of the power of attorney under which the defendant acted, certain information was presented unchallenged during oral argument on the motion. On August 23, 1994, when Edna Friedman was very ill, the defendant called his attorney, Steven Shames, with whom Edna Friedman had never enjoyed a personal or professional relationship. As a result of that call, Mr. Shames drafted the power of attorney which the defendant had his mother sign on August 24, 1994. The plaintiffs assert that she lacked capacity to execute the document, but that is a matter to be resolved at trial. However, absent reliable evidence that Edna Friedman gave specific directions concerning the preparation of the power of attorney, the Court concludes that the defendant was responsible for its draftsmanship. It is clear that any ambiguity in a writing must be resolved against the one who drafted it. 4B M.J., *Contracts*, § 44.

When a writing is clear and unambiguous, it is the duty of the court rather than the jury to decide its meaning. *Winn v. Aleda Const. Co.*, 227 Va. 304, 307 (1984). I find that the power of attorney executed by Edna Friedman on August 24, 1994, appointing the defendant her attorney-in-fact, is clear and unambiguous. It does not, on its face, give the defendant the power to make gifts *causa mortis* for Edna K. Friedman.

Virginia Code § 11-9.5 was amended in 1992 to clarify the issue of an attorney-in-fact's authority to make gifts. That statute provides, in pertinent part:

> the attorney-in-fact or agent shall have the power and authority to make gifts in any amount of any of the principal's property ... *in accordance with the principal's personal history of making or joining in the making of lifetime gifts.*

Va. Code Ann. § 11-9.5 (Michie 1993) (emphasis added). It is, then, a question for the Court to determine whether Edna K. Friedman had a personal history of making gifts of the type the defendant made under the power of attorney. In determining this history, which is dispositive of the issue of her intent, one must look to the complete text of the power of attorney and the circumstances surrounding its execution. *Estate of Ridenour v. Commissioner of Internal Revenue*, 36 F.3d 332, 335 (4th Cir. 1994). Any evidence that she had made such gifts would obviously be significant.

Statements made by Edna Friedman to any party must be corroborated to be admissible. *See* Va. Code Ann. § 8.01-397. Corroborating evidence is that which tends to confirm or strengthen the testimony of the witness to be corroborated. It may emanate from other witnesses or by surrounding circumstances adequately established. *See Penn v. Manns*, 221 Va. 88, 93 (1980) (*citing Brooks v. Worthington*, 206 Va. 352 (1965)). Corroborating evidence need not be sufficient to support a verdict while standing alone. *Id.*

Paragraph 2 of the plaintiffs' motion is denied.

C. *Any testimony as to the existence and content of any writing(s) made or signed by Edna K. Friedman purporting to authorize Stephen J. Friedman to make any gifts of her property to himself or others, which alleged writing cannot be produced, authenticated, and offered into evidence.*

The plaintiffs' motion seeks to exclude testimony as to the existence and content of any writing made or signed by Edna K. Friedman purporting to authorize the defendant to make gifts to himself or others. The Court agrees

with the plaintiffs' assertion that *prior* expressions of Edna K. Friedman were merged into the written power of attorney and are not admissible to vary, contradict, add to, or explain its terms. 7B M.J., *Evidence*, § 130. Any such writings or secondary evidence as to such writings, made *before* the power of attorney was executed, may be offered only to show the extent to which Edna K. Friedman participated in the drafting of the power of attorney. However, any such writings made *after* execution of the power of attorney are relevant and material if proved. Under the "best evidence rule":

> where the contents of a writing are desired to be proved, the writing itself must be produced, or its absence accounted for before other evidence of its contents can be admitted. *Butts v. Commonwealth*, 145 Va. 800, 816 (1926).

The defendant has stated that he no longer has the alleged note which purportedly grants Stephen Friedman the power to make gifts to himself and others. The defendant has also stated that it will offer ample proof explaining the unavailability of the note. In Virginia, "it is ... admissible to prove, by secondary evidence, a document which it is out of the power of the party to produce." *Wright v. Commonwealth*, 82 Va. 183, 186 (1886). Should the defendant succeed in proving the existence of the excuse for non-production of the original *and* the admissibility of that original, the Court will allow evidence to prove the existence and content of such writing only as it pertains to the time period *after* the execution of the power of attorney.

## II. *Defendant's Motion to Use the Shames Deposition*

## III. *Shames' Motion to Quash Subpoena Duces Tecum*

## IV. *Plaintiffs' Motion to Preclude Use of Certain Testimony in Shames' Deposition*

These matters are interrelated, and a ruling on one of necessity affects the others. Cases involving fraud are of a most serious nature because they affect the reputations and property of others. When possible, the finder of fact should have the benefit of seeing the witnesses who are testifying. Depositions relate words but not demeanor, and without a personal appearance, the finder of fact approaches its task of weighing credibility at a distinct disadvantage. Thus, the Court will deny the defendant's motion to use Mr. Shames' deposition in lieu of his testifying in person at trial.

The Court is of the opinion that the subpoena *duces tecum* directed to Mr. Shames is unduly burdensome. The Court also believes that the opinion that the information sought in that subpoena is available through other means. Therefore, the Court will grant Mr. Shames' Motion to Quash the Subpoena *Duces Tecum* directed to him at the plaintiffs' request.

The plaintiffs' Motion to Preclude Use of Certain Testimony in the Shames Deposition is now moot in light of the foregoing rulings and is therefore denied. However, the Court will not permit "double" hearsay at trial nor will the Court permit Mr. Shames to testify in the defendant's case in chief as to what Stephen Friedman may have stated as matters told him by his mother. Such testimony provides too fertile a ground for fraud and is totally self-serving.

## V. *Plaintiffs' Motion for Summary Judgment*

Summary judgment is not appropriate if material facts are in dispute. *Ciejek v. Laird*, 238 Va. 109, 113 (1989); Rule 2:21 of the Rules of the Supreme Court. Thus, in considering a motion for summary judgment prior to trial, the court will resolve doubt as to factual matters against the party moving for summary judgment. *Reston Recreation Center Assocs. v. Reston Property Investors Limited Partnership*, 238 Va. 419, 422 (1989).

Gifts *causa mortis* are not favored in law. Although one has a right to make such gifts, they are carefully scrutinized by the Court because of the great opportunity for fraud. Thus, gifts *causa mortis* must be proved clearly, plainly, and unequivocally. *Quarles v. Folkes*, 147 Va. 493 (1927).

A gift *causa mortis* is characterized by several attributes:

1. The gift must be of personal property.
2. The gift must be made during the donor's last illness.
3. The donee must receive possession, either actual or constructive, of the property at the time of the gift.
4. The gift is given under the implied condition that if the donor recovers from the illness, the gift is void.
5. The gift must be accepted by the donee.

9A M.J., *Gifts*, § 36. The law does not presume that a gift is made, and the burden is on the donee to prove the gift by clear and convincing evidence. *Id.*

The Court will not indulge in speculation as to what the defendant can or cannot prove at trial. Suffice it to say, that there are material facts in dispute, and summary judgment on the bill of complaint *in toto* is inappropriate.

However, the plaintiffs urge that as to certain items of property, summary judgment remains appropriate. These items include stocks, mutual funds, annuities, and funds on deposit.

Plaintiffs rely on *Woo v. Smart*, 247 Va. 365 (1994), in arguing that delivery of these items was not complete, thus defendant's claim of a gift *causa mortis* is negated. The *Woo* case dealt specifically with checks given by the donor/decedent to the donee. The donee did not present the checks to the bank for payment until after the donor's death. The Court relied on a specific statute dealing with the transfer of checks in reaching its decision. *See* Va. Code Ann. § 8.3A-408 (Michie 1994) (formerly § 8.3-409(1)). No such statute is clearly applicable to the specific items of property at issue.

In sum, the stipulated evidence does not address the questions presented so comprehensively as to support summary judgment at this stage of the proceedings. Accordingly, the plaintiffs' Motion for Summary Judgment will be denied.

## VI. *Defendant's Motion to Strike Certain of the Plaintiffs' Answers to Interrogatories*

The Court has been advised that this motion is no longer at issue, therefore, the Court approves its withdrawal.