**CIRCUIT COURT OF THE CITY OF RICHMOND**

Victoria L. Lightner,
Administrator c.t.a.
of the Estate of
Jeffrey Brian Lightner,
deceased

    v.

Bennie Ferguson,
Administrator
of the Estates of
Bennie Lightner
and Felicity Lightner,
deceased, et al.

November 30, 2001

Case No. HQ-1742-4

BY JUDGE RANDALL G. JOHNSON

This is an action for direction and advice, sometimes referred to as aid and guidance, filed by the Administrator c.t.a. of the Estate of Jeffrey Brian Lightner, deceased. Named as defendants are the Administrator of the Estates of Bennie Lightner and Felicity Lightner, both deceased, who were the wife and daughter of Jeffrey Lightner, Jeffrey Lightner's five siblings, Jeffrey Lightner's father, twenty-seven known creditors of Jeffrey Lightner's estate and/or Bennie Lightner's estate, a mutual fund company which holds Individual Retirement Accounts owned by Jeffrey Lightner, and "Parties Unknown," those being the unknown creditors of Jeffrey Lightner's estate and other unknown parties who may have an interest in his estate. All of the defendants have been served, either personally, by order of publication, or otherwise, and a notice of hearing was given to those defendants who have

appeared. A hearing was held on November 21, 2001. Present were counsel for the Administrator of Jeffrey Lightner's estate, counsel for the Administrator of the estates of Bennie and Felicity Lightner, and counsel for Colonial Farm Credit, one of the known creditors of the estates of Jeffrey and Bennie Lightner.

At the hearing, evidence was presented by way of stipulations entered into by the estates of Jeffrey, Bennie, and Felicity Lightner. Although Colonial Farm Credit did not join in the stipulations, its counsel did not object to them. The stipulations show that Jeffrey and Bennie Lightner were husband and wife and lived in the City of Richmond. They had one daughter, Felicity, who lived with them. On December 13, 1999, Richmond police were called to the Lightners' home. Upon entering the house, the police discovered the bodies of Jeffrey, Bennie, and Felicity Lightner, all of whom were dead. Jeffrey Lightner's body was found in the kitchen. Bennie Lightner's body was found in her bedroom. Felicity Lightner's body was found in her bedroom. The medical examiner determined that each had died from a gunshot wound to the head. A pistol was found near the body of Jeffrey Lightner. The police reports and medical examiner's reports stated that Jeffrey Lightner's death was suicide and that the deaths of Bennie and Felicity Lightner were homicides. The death's of Bennie and Felicity Lightner each occurred "within seconds" of being shot. The police found a note, written by Jeffrey Lightner, in the house. Jeffrey Lightner also mailed a seven-page handwritten letter to his sister, Victoria L. Lightner, who lives in Tucson, Arizona. The letter to his sister begins "By the time you read this, you will already know that we are dead." The letter has been probated by the clerk of this court as a will.

At the time of the deaths, Jeffrey Lightner owned Individual Retirement Accounts with The Vanguard Group totaling $49,953.85. Some of those accounts are now at issue. On those accounts that are at issue, Bennie Lightner is the primary beneficiary and Felicity Lightner is the secondary beneficiary. Jeffrey Lightner also mailed three cashier's checks in the amount of $7,000 each to his sister, Victoria Lightner, and to his brothers Robert and Lawrence Lightner. The checks were received after the deaths. A wrongful death suit has been filed against the Estate of Jeffrey Lightner by the Estate of Bennie Lightner and is currently pending in this court.

Four matters are presented for direction and advice by Jeffrey Lightner's Administrator. They are (1) whether the "Slayer Statute," Va. Code § 55-401 *et seq.*, applies to the facts of this case; (2) if the Slayer Statute applies, whether Va. Code § 55-408 prevents the questioned Vanguard IRAs from being part of Jeffrey Lightner's estate; (3) whether the $7,000 checks to

Jeffrey Lightner's siblings were gifts causa mortis; and (4) whether, and to what extent, the Administrator of Jeffrey Lightner's estate should defend the wrongful death suit brought by the Estate of Bennie Lightner. The court will address each matter in turn.

## I. *Slayer Statute*

The Slayer Statute is comprised of Virginia Code §§ 55-401 through 55-415. Section 55-401 defines a "slayer" as:

> any person (i) who is convicted of the murder of the decedent or, (ii) in the absence of such conviction and where such person has not been acquitted and is not available for prosecution by reason of his death by suicide or otherwise, who is determined by a court of appropriate jurisdiction by a preponderance of the evidence to have murdered the decedent. For the purposes of subdivision (ii), the party seeking to establish that a decedent was murdered by such person shall have the burden or proof.

Section 55-402 provides:

> Neither the slayer nor any person claiming through him shall in any way acquire any property or receive any benefits as the result of the death of the decedent, but such property shall pass as provided in the sections following.

Based on the evidence presented at the hearing, the court has no hesitation in finding that Jeffrey Lightner murdered his wife and daughter. In fact, no party to this proceeding has offered any argument against the application of the Slayer Statute. The only concern of Jeffrey Lightner's Administrator is that "one person has come forward and told Petitioner that Jeffrey Lightner was suffering from bipolar disorder." Bill of Complaint, Paragraph 19. The Administrator wants to be sure that no one later raises an argument that Jeffrey Lightner was not guilty of murder by reason of insanity. The court appreciates the Administrator's candor but agrees with the parties that the Slayer Statute applies.

Section 55-401(1)(ii) provides a method by which a person who is unavailable for prosecution because he or she is dead can be declared by a court to be a slayer. Jeffrey Lightner's Administrator has invoked that method

here.[1] All interested parties had notice of the November 21 hearing. If any party wanted to present evidence of Jeffrey Lightner's insanity or any other evidence or argument in opposition to Jeffrey Lightner's being declared by the court to be a slayer, the November 21 hearing was the time to do so. In the absence of such opposing evidence or argument, and whether it is Jeffrey Lightner's Administrator or Bennie and Felicity Lightner's Administrator who is seeking to establish that Jeffrey Lightner is a slayer — each did so at different times during the hearing — the stipulations discussed above easily prove by a preponderance of the evidence that he is. The court now so declares.

## II. *Vanguard IRAs*

Virginia Code § 55-408 provides as follows:

> Any interest in property, whether vested or not, held by the slayer subject to be divested, diminished in any way, or extinguished if the decedent survives him or lives to a certain age, shall be held by the slayer during his lifetime or until the decedent would have reached such age, but shall then pass as if the decedent had died immediately after the death of the slayer or the reaching of such age.

The Administrator of Bennie and Felicity Lightner's estates argues that the above section means that Jeffrey Lightner's Vanguard IRAs now belong to Bennie Lightner's estate. The court disagrees.

It is the position of Bennie and Felicity Lightner's Administrator that the statute's reference to property subject to divestment is broad enough to cover property which passes to a named beneficiary at the owner's death, in this case, the IRAs. Upon Jeffrey's death, the argument goes, Jeffrey Lightner was divested of the IRAs. Thus, they now belong to the Estate of Bennie Lightner. That argument misinterprets the term "divested."

Obviously, a person cannot own property after death. That does not mean, however, that such person is "divested" of his or her property. To the contrary,

---

[1] *But see Peoples Security Life Ins. v. Arrington*, 243 Va. 89, 412 S.E.2d 705 (1992), holding that the Slayer Statute does not abrogate the common law maxim that no person should be permitted to profit by his or her own wrong, thus allowing a party to prevent another party from receiving benefits on account of the death of a decedent if the first party can prove, by a preponderance of the evidence, that the other party "procured, participated in or otherwise directed" the decedent's death.

the person's property goes to whomever the decedent has chosen in his or her will or, if there is no will, to such person's heirs. In the latter case, it can rightly be said that the decedent made a conscious decision to leave his or her property to the heirs by not executing a will, everyone being presumed to know the law. Divestment, on the other hand, takes away a person's right to choose what happens to his or her property upon the happening of a specified event. For example, a person may be given property in fee simple if he lives longer than a second person; otherwise, it passes to the second person. Under § 55-408, if the first person murders the second person, the first person would continue to own the property for the rest of his or her life, but it would then pass to the beneficiaries or heirs of the second person. That is not what happened here.

In the present case, Jeffrey Lightner did not own the IRAs subject to his ownership being divested, diminished, or extinguished if his wife or daughter survived him. He owned them as long as he wanted them. If he continued to own them at his death, they passed to whomever he had named as his beneficiary, and if he had not named a beneficiary or if his named beneficiaries predeceased him, to his estate. That is not divestment, diminishment, or extinguishment; that is the ordinary passing of property at death. Since his wife and daughter did predecease him and since they were the only beneficiaries he had named, they now belong to his estate. They do not belong to the estate of Bennie or Felicity Lightner.

### III. *Gifts Causa Mortis*

The next issue for determination is whether the $7,000 cashier's checks that Jeffrey Lightner sent to three of his siblings were gifts causa mortis; that is, gifts made in contemplation of death. In order to establish a gift causa mortis, four elements must be proved. First, there must be an intent to make a gift. Second, the gift must be of personal property. Third, the gift must be made while the donor is under the apprehension of imminent death, upon the essential condition that the property shall belong to the donee if the donor dies as anticipated leaving the donee surviving, and the gift is not revoked in the meantime. Fourth, possession of the property given must be delivered at the time of the gift to the donee, or to someone for the donee, and the donee must accept the gift. *Woo v. Smart*, 247 Va. 365, 368-69, 442 S.E.2d 690 (1994). The donee must establish the gift causa mortis by clear and convincing evidence. *Id.*

At the hearing, counsel for the Administrators of the three estates presented interesting arguments about whether a transfer made in contemplation of suicide can be a gift causa mortis. While that question does not seem to have been addressed by our Supreme Court, it has been addressed by the highest courts of other states. In some jurisdictions, such transfers are not gifts causa mortis because of public policy. *In re Stockham's Estate*, 193 Iowa 823, 186 N.W. 650 (1922); *Pikeville v. Nat. Bank & Trust Co.*, 281 Ky. 150, 135 S.W.2d 426 (1939). In others, they are valid gifts causa mortis. *In re Van Wormer's Estate*, 255 Mich. 399, 238 N.W. 210 (1931); *Scherer v. Hyland*, 153 N.J. Super. 521, 380 A.2d 704 (App. Div. 1976), *aff'd* 75 N.J. 127, 380 A.2d 698 (1977).

Counsel for the Administrator of Bennie and Felicity Lightner's estates also reminded the court of *Woo v. Smart*'s holding that a personal check is not, prior to acceptance or payment by the bank, the subject of a valid gift causa mortis. 247 Va. at 369-70. Does the same rule apply to a cashier's check?

The court also notes that the checks were not received until after Jeffrey Lightner's death. Were they delivered when they were mailed, and does the donee's acceptance have to occur before the donor's death? While all of those questions are intellectually interesting, they need not be decided in this case.

As already noted, the burden of proving a gift causa mortis is on the donee. *Woo v. Smart*, 247 Va. at 369. *See also Quarles v. Fowlkes*, 147 Va. 493, 508, 137 S.E. 365, (1927). As also noted earlier, all parties to this action had proper notice of the November 21st hearing, including the recipients of the checks. If any of those persons wanted to establish those checks as gifts causa mortis, that was the time to do it. Since they did not, the court holds that the checks were not gifts causa mortis. Although Victoria Lightner, as Administrator of Jeffrey Lightner's estate, is the plaintiff in this action, she has not made an appearance as a defendant. She offered no evidence or argument as a defendant at the November 21st hearing.

## IV. *Defense of Wrongful Death Claim*

The final matter on which Jeffrey Lightner's Administrator seeks direction and advice is whether, and to what extent, he must defend the wrongful death action filed by Bennie Lightner's estate. His concern is that with all of the other claims being made on Jeffrey Lightner's estate, any recovery had in the wrongful death claim would be beyond the estate's capacity to pay. If that is true, it does not make sense to spend much money to defend the wrongful death action.

The court appreciates the Administrator's concern and would like to be helpful. The Administrator, however, is in a better position to make that determination than is the court. Moreover, the court does not believe that any direction and advice it might give in this regard would relieve the Administrator of his duty to properly manage the estate. The court will give no direction and advice on this issue at this time.

In light of counsel's suggestion that other issues may arise during the administration of Jeffrey Lightner's estate on which the court's direction and advice might be requested, the case will remain on the court's active docket.